LAUDERDALE COUNTY *et al. v.* CITY OF MEMPHIS.

*(Jackson.* April Term, 1934.)

Opinion filed May 31, 1934.

WATKINS & WATKINS, of Ripley, for appellants.

CRAIG & DURHAM and STEELE & STEELE, all of Ripley, for appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

In March, 1931, the sheriff of Lauderdale County, accompanied by four of his deputies, visited the location of a still, where whisky was being manufactured unlawfully, and undertook to arrest the group of men there found. They met with armed resistance and, in the exchange of shots, one of the deputies shot Ben Outerbridge, a negro man about seventy years of age. The wounded man was brought to the county jail and the county physician was summoned. He found the man suffering from a dangerous wound and concluded that he was in a critical condition, in need of surgical attention and hospital service not locally available.

The county physician, and another called into consultation, determined that the wounded man should be sent to Memphis General Hospital, as the nearest place where the necessary surgical attention could be procured. The sheriff communicated the facts to the county judge, who merely referred him to the county physician.

Thereupon the sheriff and the county physician caused the man to be carried to the Memphis hospital, which is operated by the city. With the patient they sent two letters, which we quote:

"March 18, 1931.

"General Hospital Memphis, Memphis, Tennessee.

"General Superintendent.

"Dear Sir: We sent you a patient today, one Ben

Outerbridge, or Autobridge, for treatment for gunshot wounds. The County of Lauderdale will pay for this treatment.

"Yours very truly,

"J. T. Coughlan, Sheriff."

"March 18, 1931.

"To Superintendent General Hospital, Memphis, Tennessee.

"Please admit the prisoner, Ben Outerbridge, colored, male, about 70 years, to surgical ward for treatment.

"R. B. Griffin, County Physician,

"J. T. Coughlan, Sheriff,

Lauderdale County, Tennessee."

The requested service was furnished by the hospital, and, after twenty-six days, the patient was discharged. The prosecution pending against him was subsequently dismissed, upon the humane theory that he had suffered enough for his misdemeanor, it not appearing that he was responsible for the resistance offered the officers at the time of his arrest.

This action is a suit by the city of Memphis against Lauderdale County, to recover the value of the hospital service rendered, on the theory that the county physician was authorized by law to bind the county; and, in the alternative, against the county physician and sheriff, individually, because of their actions and representations in the premises.

The chancellor dismissed the bill against all defendants, holding none of them liable. The Court of Appeals rendered decree against Lauderdale County, and did not find it necessary to consider the alternative theory. Both the county and the city of Memphis filed petitions for *certiorari,* which have heretofore been granted.

Liability of the county is predicated upon Acts 1885, chapter 95, section 4, creating the office of county physician and providing that it is his duty to "render" medical and surgical attention to patients of the county confined in the county jail.

This statute was carried into Shannon's unofficial Code of 1896 as section 3109, and in that compilation the word "order" was incorrectly substituted for the word "render." The legislative Code of 1932, enacted after the rights herein had accrued, preserves and adopts the error of the former compilation, in section 5778.

In changing the wording of the statute, we think the codifiers intended only to make it certain that the medical treatment of prisoners should be under the orders of the county physician; that is, that his authority in such matters should be superior to that of the sheriff or jailor. Neither the old statute nor the Code of 1932 supports an inference that the county physician is authorized to bind the county to pay the cost of medical or hospital service rendered to a prisoner by any one other than the county physician. Such liability cannot be fastened upon a county by implication. There is no obligation on the county to furnish hospital service to jail prisoners who cannot pay its cost. The problem of hospitalization for indigent citizens is an economic problem, not limited to those who happen to be confined in jail when their need arises. The statute requires the county physician to attend the prisoners in the county jail and to direct or order their course of treatment, but in so far as service is ordered which the physician himself cannot render, the prisoner is left to his own resources to provide it, in the same manner and degree as if he were not in confinement. There is therefore no statutory authority for

holding the county liable for the account of the Memphis hospital in this case. We approved a ruling of the Court of Appeals to this effect in *Howard-Henderson Hospital* v. *Campbell County,* 13 Tenn. App., 585.

■ It is conceded that the county physician and sheriff were acting in good faith, believing that the county would be liable for the service they requested for the prisoner. Their requests affirmatively negatived any idea that they were acting individually, and the hospital authorities so understood them. They made no representations, however, that they had any particular or special authority to act for the county in this matter. And, as pointed out by the chancellor in his opinion, there is no averment or proof that the hospital authorities were without full knowledge of all the attendant circumstances when they rendered the service for which the city of Memphis claims compensation.

In these circumstances, absence of liability on the part of the sheriff and county physician is clearly ruled by our case of *Warters* v. *Boswell,* 152 Tenn., 476, 482, 279 S. W., 793, 794, wherein we said:

"We think without a doubt it is a general rule that, when public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable unless the intent to incur personal responsibility is clearly expressed, although it should be found that, through ignorance of the law, they have exceeded their authority."

The decree of the Court of Appeals will be reversed and the decree of the chancellor, dismissing the suit, affirmed.