[Civil No. 4137.   Filed July 10, 1939.]

[92 Pac. (2d) 334.]

SIMS PRINTING COMPANY, a Corporation, Plaintiff, v. ANA FROHMILLER, State Auditor of Arizona, Defendant.

Mr. Elmer Graham, for Plaintiff.

Mrs. Ana Frohmiller, Defendant, *in pro. per.*

ROSS, C. J.—This is an original proceeding in *mandamus* by the Sims Printing Company to compel the state auditor, Ana Frohmiller, to audit and allow a balance of a claim against the state for publishing the publicity pamphlet for the 1938 regular general election.   Such pamphlet contained four proposed amendments to the Constitution and three initiative measures by the people.   Plaintiff's claim for publishing

the pamphlet, under contracts with James H. Kerby, Secretary of State, amounted to the sum of $4,344.

In such pamphlet the secretary included one amendment to the Constitution and two initiative measures that had been proposed by the people for the 1936 regular general election, and the auditor, claiming the expense of publishing such amendment and initiative measures in the 1938 pamphlet was not a legal charge against the state, refused to pay therefor. These three measures occupied 17 of the 40 pages contained in the pamphlet. The rejected portion of the claim, $^{17}/_{40}$ thereof, amounted to $1,846.20, which is the amount sued for.

The negligence and failure of the secretary of state to submit to the voters the amendment and measures proposed for the 1936 election, we held, in *Kerby* v. *Griffin,* 48 Ariz. 434, 62 Pac. (2d) 1131, were inexcusable. It seems that, although the secretary published at the expense of the state a publicity pamphlet for such election containing the proposed amendment and initiative measures, he did not send such pamphlet to the boards of supervisors of the different counties, for distribution at the primary election as the law required, and for that reason he was enjoined from submitting them at the 1936 general election.

■■ If under the Constitution the secretary of state may submit to the voters proposed amendments, initiative and referred measures at any subsequent election, then he would perhaps be authorized to incur the expense here sued for. There is no question but that the amendment and initiative measures filed with the secretary in 1936 were filed in time to be submitted to the voters at the 1936 election. Subdivisions (5) and (10) of section 1 of article 4 of the Constitution read:

"(5) Any measure or amendment to the Constitution proposed under the Initiative, and any measure

to which the Referendum is applied, shall be referred to a vote of the qualified electors, and shall become law when approved by a majority of the votes cast thereon and upon proclamation of the Governor, and not otherwise.''

''(10) When any Initiative or Referendum petition or any measure referred to the people by the Legislature shall be filed, in accordance with this section, with the Secretary of State, he shall cause to be printed on the official ballot *at the next regular general election* the title and number of said measure, together with the words 'Yes' and 'No' in such manner that the electors may express at the polls their approval or disapproval of the measure.'' (Italics ours.)

Subdivision (5) makes it imperative to submit the legislation proposed by the people for their vote, and subdivision (10) fixes the time of such submission, which is "at the next regular general election." If this constitutional provision had been complied with, the 1936 proposed legislation would have been submitted at the general election in November of that year. The provisions of the Constitution are mandatory, unless by express words they are declared to be otherwise. Article 2, sec. 32. We conclude that the Constitution means what it says and that the secretary of state was without power or authority to submit the 1936 proposed legislation by the people at the 1938 regular general election, and therefore he had no right to incur the expense for the publication of such proposed legislation.

Counsel for plaintiff seems to entertain the idea that because plaintiff rendered the service to the secretary in good faith, and because the secretary approved the account, it was the duty of the auditor to allow it and draw her warrant on the treasury therefor. He relies upon *Proctor* v. *Hunt,* 43 Ariz. 198, 29 Pac. (2d) 1058, to sustain him in his contention. That was a suit by a taxpayer to recover from the governor, auditor and treasurer certain sums of

money allegedly unlawfully spent by the governor. We held that the auditor and the treasurer were not liable for the issuance and payment of warrants for claims made by the governor where it did not affirmatively appear that such claims were not for a public purpose. We were there considering not what the auditor should or should not allow but the standard of diligence on her part that would exempt her from liability for claims approved and allowed by her and paid by the treasurer. We said if a claim presented to her "was authorized or permitted to be incurred by any state officer or agency," was properly made out, verified and approved as correct, and appeared to be for a public purpose, etc., it was the duty of the auditor to issue her warrant for it. But the claim here was not authorized or permitted. Its incurrence by the secretary can find no sanction anywhere. It is too bad that the plaintiff should have rendered valuable service and not be recompensed therefor. The remedy open to plaintiff, if it has one at all, is against the person who procured the publishing of the 1936 items in the publicity pamphlet for 1938.

We think the auditor must be sustained in her refusal to audit and allow and draw her warrant for the balance of the claim.

The alternative writ of *mandamus* is quashed.

LOCKWOOD and McALISTER, JJ., concur.