[Civil No. 4245. Filed October 7, 1940.]

[106 Pac. (2d) 197.]

SIMS PRINTING COMPANY, a Corporation, Appellant, v. JAMES H. KERBY and MARYLAND CASUALTY COMPANY, a Corporate Surety Company, Appellees.

Mr. P. H. Brooks, for Appellant.

Mr. E. G. Frazier and Mr. M. C. Burk, for Defendant James H. Kerby.

Messrs. Stahl & Murphy, for Defendant Maryland Casualty Company.

LOCKWOOD, J.—Sims Printing Company, a corporation, hereinafter called plaintiff, brought suit against James H. Kerby, hereinafter called defendant, and Maryland Casualty Company, a corporate surety company, hereinafter called surety, to recover the sum of $1,846.20, being the amount expended by plaintiff in connection with a certain contract entered into by it with defendant in his official capacity as Secretary of State of the state of Arizona. Defendant and the surety demurred to the complaint and the demurrer being sustained, plaintiff elected to stand upon its complaint, whereupon judgment was rendered in favor of defendant and the surety, and this appeal is before us.

This action arose out of the situation set forth in the case of *Sims Printing Co.* v. *Frohmiller,* 54 Ariz. 64, 92 Pac. (2d) 334. We take judicial notice of all other proceedings in this court and the record

therein. *Stewart* v. *Phoenix Nat. Bank,* 49 Ariz. 34, 64 Pac. (2d) 101; *Engle* v. *Clark,* 53 Ariz. 472, 90 Pac. (2d) 994. The statement of facts is, therefore, based both on the record in this case and that in *Sims Printing Co.* v. *Frohmiller, supra.*

In 1938 defendant was the Secretary of State of the state of Arizona. Under the law it was his duty to cause the publication of a pamphlet setting forth the initiative and referendum measures to be submitted to the voters at the regular general election in that year. Section 1746, Rev. Code 1928, as amended by chap. 62, Sess. Laws of 1935. He entered into a contract with plaintiff to do this work, and when the copy for the pamphlet was submitted to it, defendant included therein one amendment to the Constitution, and two initiative measures that had been proposed by the people during the year 1936, but which had not been submitted at the general election held in that year, for reasons which are set forth in *Kerby* v. *Griffin,* 48 Ariz. 434, 62 Pac. (2d) 1131. The auditor refused to approve any payment to plaintiff for the seventeen pages which contained the measures last referred to, and the matter was brought before us in *Sims Printing Co.* v. *Frohmiller, supra.* Therein we held that it was improper to include such measures in a publicity pamphlet setting forth the measures to be submitted at the 1938 regular general election, and sustained the conduct of the auditor in refusing to approve a claim therefor against the state. In that opinion we said [54 Ariz. 64, 92 Pac. (2d) 335]:

" . . . We conclude that the constitution means what it says and that the secretary of state was without power or authority to submit the 1936 proposed legislation by the people at the 1938 regular general election, and therefore he had no right to incur the expense for the publication of such proposed legislation.

" . . . But the claim here was not authorized or permitted. Its incurrence by the secretary can find no sanction anywhere. It is too bad that the plaintiff should have rendered valuable service and not be recompensed therefor. The remedy open to plaintiff, *if it has one at all,* is against the person who procured the publishing of the 1936 items in the publicity pamphlet for 1938." (Italics ours.)

 It was doubtless upon the language contained in the last quotation that this present action was based. The general rule of law governing the present situation is well stated in the case of *Sanborn* v. *Neal,* 4 Minn. 126, 4 Gil. 83, 77 Am. Dec. 502, as follows:

"When public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur a personal responsibility is clearly expressed, although it should be found that through ignorance of the law they may have exceeded their authority. In the whole list of cases cited to this point, there is not a reason given for this doctrine which does not apply with full force to Trustees of school districts and all other officers acting on behalf of the public, whether they act for the public at large, or that portion only embraced in a particular district. In this as in all other cases, the intention of the parties governs, and when a person, known to be a public officer, contracts with reference to the public matters committed to his charge, he is presumed to act in his official capacity only, although the contract may not in terms allude to the character in which he acts, *unless the officer by unmistakable language assumes a personal liability, or is guilty of fraud or misrepresentation.* Being a public agent with his powers and duties prescribed by law, the extent of his powers are presumed to be as well known to all with whom he contracts as to himself. When therefore there is no want of good faith, a party contracts with such an officer with his eyes open, and has no one to blame if it should afterwards appear that the officer had not the author-

ity which it was supposed he had. Were the rule otherwise, few persons of responsibility would be found willing to serve the public in that large class of offices, which requires a sacrifice of time and perhaps money, but affords neither honor nor profit to the incumbent. Where one acts as the agent of a private person, the rule is different. There the authority is known only to the agent and his principal. He is therefore, with reason, held personally responsible, if he fails to bind his principal, because he is bound to know the extent of his authority, while the party with whom he contracts is not presumed to know anything concerning it." (Italics ours.)

This rule has been followed in many cases, and we think it is not open to serious question. *Lauderdale County* v. *City of Memphis,* 167 Tenn. 493, 71 S. W. (2d) 686; *Warters* v. *Boswell,* 152 Tenn. 476, 279 S. W. 793; *Henry* v. *Henry,* 73 Neb. 746, 103 N. W. 441, 107 N. W. 789; *Scheiber* v. *Von Arx,* 87 Minn. 298, 92 N. W. 3.

The complaint in the present action shows that it was drawn by a pleader who had full knowledge of the rule of law just stated, and it is apparent that he has endeavored to bring it within the rule. The precise question is whether he has done so.

We first consider the status of the surety. It is made a party on the theory that the conduct of defendant was a violation of his official bond, and that under such circumstances the surety is liable therefor. The condition of defendant's bond is as follows: "that the principal will well, truly, and faithfully perform all official duties then required, or as may be imposed on him, by law." Section 71, Rev. Code 1928. If the condition of the bond is violated any person injured or aggrieved by the wrongful act or default of the officer in his official capacity may sue on the bond in his own name. Section 75, Rev. Code 1928. We have held in the case of *Weidler* v. *Arizona Power Co.,* 39 Ariz. 390,

7 Pac. (2d) 241, 243, that all persons are bound at their peril to know the law and the limitations, powers and duties of public officers, and that one may not recover on the bond of such officer for an act which was beyond his official powers. Plaintiff was bound to know that defendant had no right or authority under any provision of law, in his capacity as Secretary of State, to have printed in the publicity pamphlet of 1938 measures which could not be submitted that year. This being the case, his action in ordering the printing was not one in the performance of an official duty. In the Weidler case, *supra,* we laid down the vital test as follows:

" 'When an officer acts *in the performance of his duty,* and, so acting, acts to the hurt or annoyance of a third party or an innocent party, he is nevertheless acting in virtue of his office. That is to say, *if his office gives him authority to act,* he is acting in virtue of his office, although, in the performance of a specific duty he improperly exercises his authority.' (Italics ours.)" *Greenius* v. *American Surety Co.,* 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F 1134.

Applying this principle to the case at bar, if the law had authorized defendant to have the 1936 measures printed in the pamphlet of 1938, and he had done so in a negligent or careless manner, he would have been liable on his official bond for failure to perform his duty properly, but since he had no authority whatever to include these measures in the publicity pamphlet of 1938, his act in contracting to have this done was not an official one, and he is not liable in a suit on his official bond for such act. It, therefore, follows that under no circumstances could the surety be liable on the bond.

We consider next the liability of defendant in his private capacity. There are three factual situations which may have existed. Both plaintiff and

defendant may have believed in good faith, knowing all the facts of the case, that the latter had a right as a matter of law to enter into the contract on behalf of the state. Under the rule above stated, if both parties acted in good faith, with a full knowledge of the facts but were mistaken as to the law, there is no personal liability of the defendant. Or, it may be that both parties acted with full knowledge of the facts but in bad faith, knowing the law to be against them, but believing that they could "put over something" on the auditor. In such a case, they are in *pari delicto,* and plaintiff may not recover from defendant. On the other hand, it may be that defendant deliberately and intentionally misled plaintiff as to the fact that part of the copy covered the 1936 measures, and the plaintiff printed that portion of the pamphlet relying upon the statements or acts of defendant, and believing in good faith that what it printed was part of the 1938 measures. In the latter case, an action for fraud would lie against defendant. Upon examining the complaint, it is apparent that there was an attempt upon the part of the pleader to bring it within the latter principle, for it alleges: "defendant Kerby knowingly, wrongfully and without authority at law, and without the knowledge of plaintiff, included one proposed constitutional amendment and two initiative measures which were filed in the office of Secretary of State in July, 1936, and should have been presented to the voters at the 1936 general election." We have stated the necessary elements of actionable fraud in the case of *Moore* v. *Meyers,* 31 Ariz. 347, 253 Pac. 626, 628, as follows:

" . . . (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right

to rely thereon; (9) his consequent and proximate injury. 26 C. J. 1062. If these factors all appear, a cause of action for fraud will unquestionably exist."

Let us examine the complaint to see whether these elements appear sufficiently therein. It is not necessary to set it forth in full as it is somewhat lengthy. While specific and precise allegations of all the essential elements of actionable fraud are not set forth therein, and it was undoubtedly subject to a motion to make more definite and certain, yet we think that proof of all the matters alleged in the complaint would be sufficient to justify a jury in concluding that the essential elements of fraud did exist, and the complaint is not subject to a general demurrer as against defendant.

The judgment of the superior court is reversed, with instructions to overrule the general demurrer of defendant Kerby, with leave to both parties to file such further pleadings as may be advisable under the general principles set forth in this opinion.

ROSS, C. J., and McALISTER, J., concur.