490 P.2d 551

**TOWN OF GILA BEND, a body politic,**
**Appellant,**

**v.**

**WALLED LAKE DOOR COMPANY, a Mich-**
**igan corporation, Appellee.**

**No. 10435.**

Supreme Court of Arizona,
In Banc.

Nov. 12, 1971.

Rehearing Denied Dec. 7, 1971.

Peter A. Neisser, Phoenix, for appellant.

J. William Moore and Patrick E. Burke, Phoenix, for appellee.

UDALL, Justice:

On August 20, 1968, Walled Lake Door Company (hereinafter the "Company"), a Michigan corporation qualified to do business in Arizona, filed suit against the Town of Gila Bend (hereinafter the "Town"), a body politic organized under the laws of this State, a number of individuals who were members of the Town Council of Gila Bend, and one A. H. Stout, dba Stout Water Works (hereinafter "Stout"), in the Superior Court for

Maricopa County. The complaint asserted that the Town breached a contract with the Company to construct and install a ten inch water main from the Southern Pacific Railroad Company (hereinafter "Southern Pacific") water tank in Gila Bend for approximately six thousand feet to the Company's plant in Gila Bend. Trial before the Court, sitting without a jury, resulted in judgment for the individual defendants but against the Town for costs of suit, money damages in the sum of $24,381.00, and specific performance of the contract. Said judgment ordered the Town to:

"* * * forthwith commence construction and installation of a ten inch water main beginning at the Southern Pacific Tanks in Gila Bend, Arizona, and proceeding a distance of approximately 6,000 feet to the Plaintiff's facility in Gila Bend, and the defendant Town is further ordered to complete said construction within a reasonable time; and it is further ordered that the approval of the construction plans and specifications be obtained from the defendant A. H. Stout, dba Stout Water Works, provided, however, that the said A. H. Stout, dba Stout Water Works, shall not unreasonably withhold his approval of said construction plans and specifications".

From this judgment the Town appealed. The facts necessary for a determination of this matter are as follows: For a number of years prior to eruption of this dispute, the Company has owned and operated a processing or cut stock plant in Gila Bend. In April of 1966, the Company's Gila Bend plant was substantially destroyed by fire, resulting in approximately $335,000.00 damage. Reconstruction of the plant was begun in March or April of 1967. At that time, Dale C. Campbell, vice-president of the Company, flew in from Michigan to attempt to "negotiate with the City for the providing of water or, in failing to do that, remain here to find a new location for the plant." (T.R. 90). Mr. Campbell met with the Town, through its Mayor and Town Council, and demanded that the Town provide the Company with assurance that adequate fire protection would be provided for the Company. He informed the Town that the Company could not absorb the high premiums it was forced to pay for fire insurance, resulting from the lack of an adequate water supply for fire protection, and that the Company would be forced to cease reconstruction of its plant and relocate elsewhere if negotiations failed.

In May or June of 1967, the Company entered into an agreement with the Town, whereby the Town agreed to construct and install a ten inch water main from the Southern Pacific water tanks, a distance of approximately 6,000 feet, to the Company's plant. In return, the Company agreed to rebuild the destroyed portion of its plant, replace equipment ruined by the fire, install additional equipment, and contribute $8,000.00 towards the purchase of a "pressure booster pump" to insure continued pressure even in the event of a power failure. To date, the Company has fulfilled the duties and obligations imposed upon it under the terms of the contract.[1] The Company has expended approximately $300,000.00 in rebuilding the fire-ravaged portions of its plant, it has installed new and additional equipment, it has continued its operations in Gila Bend and, as a direct result of the Town's failure to install the water main, has incurred many thousands of dollars extra expense in the form of increased fire insurance premiums. The Town, on the other hand, has not carried out its part of the bargain. At the time

1. The existence of the agreement has been stipulated to by the parties and there is substantial evidence in support thereof. In summary, the parties stipulated that:

"There was an agreement between the Town of Gila Bend and the plaintiff which provided for the construction by the Town of Gila Bend of a ten inch water main in Gila Bend; that this agreement was subject to specific enforcement, * * * ". (A.R. 83–84.)

the contract was entered into, no funds had been budgeted for any such purpose; although approximately one month later, when the succeeding year's budget was drawn up, $7,500.00 was budgeted for beginning construction of the water main.

In furtherance of the above-mentioned agreement the Mayor called a special meeting of the Town Council on May 19, 1967, at which council meeting Resolution No. 37 was "passed, adopted and approved" by unanimous vote. Resolution No. 37 stated that because the increased cost of fire insurance had made it impractical for the Company to continue its operations in Gila Bend, the Town would "proceed without unnecessary delay with the installation of a 6000 foot, 10 inch water main to run from the base of the water tank at the water company to the 4 inch hydrant at the Walled Lake Door Company". It further resolved that plans and specifications for said water main be secured immediately, ordered an immediate review of available sources of financing said project and declared an emergency to exist.

Resolution No. 38, approved and adopted by unanimous vote on May 24, 1967, ordered that a special election be held on June 16, 1967, for the purpose of approving the Town's contract. The election was held on June 16, at which time the electorate, by majority vote, authorized the Town to proceed with construction of the water line.

Subsequently, a proposed agreement between Stout and the Town was drawn up and submitted by the Town to the Arizona Corporation Commission for approval. This agreement was approved and notice thereof was mailed to the parties on November 2, 1967. Said agreement was to allow installation and connection of the water main to Stout's existing water lines and established the future ownership, operation and control thereof. The agreement was, however, entered into with the understanding that it was to be subject to Stout's "right to review all plans for installation of said lines and to approve or deny such plans within reason." (A.R. 87.) To date, Stout has approved neither of the two plans submitted.

On August 20, 1968, negotiations for construction and installation of the water main having reached an impasse, the Company filed suit. Trial before the court, sitting without a jury, resulted in judgment for the Company. From this judgment the Town appealed. The issues presented on appeal are as follows:

I. The lower court exceeded its jurisdiction when it ordered specific performance with respect to Stout Water Works, a public service corporation.

In sum and substance, the Town argues that only the Arizona Corporation Commission has the authority to supervise and regulate a public service corporation and the Superior Court, therefore, had no jurisdiction to substitute itself for the Commission in ordering Mr. Stout not to "unreasonably withhold his approval" of construction plans and specifications submitted to him. While we agree that only the Corporation Commission has the authority to supervise and regulate the activities of a public service corporation, we fail to see how the court's action, in ordering Stout not to unreasonably withhold his approval of a project which the Corporation Commission had already approved,[2]

---

2. Exhibit 13, set forth below, reflects the Corporation Commission's approval of the agreeement:

"November 2, 1967
Mr. A. H. Stout, dba
Stout Water Works
Gila Bend, Arizona
Dear Mr. Stout:
You are advised that the Commission has approved the agreement entered into by and between Stout Water Works and

the Town of Gila Bend, a municipal corporation, relative to providing fire protection water main to Walled Lake Door Co. in Gila Bend.
Very truly yours,
ARIZONA CORPORATION COMMISSION
LIONEL BLAIR,
Assistant Director
Utilities Division"

constituted an illegal attempt to regulate the public service corporation.

II. The lower court exceeded its jurisdiction in ordering specific performance affecting a public service corporation which had not been joined as a party.

The argument is advanced that Southern Pacific, the owner of the water tank to which the Town plans to connect the water line, is an indispensable party and the court erred in failing to order its joinder.

An indispensable party, under Rule 19, Rules of Civil Procedure, 16 A.R.S., is one who has such an interest in the subject matter that a final decree cannot be made without either affecting his interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. The test of indispensability in Arizona is whether the absent person's interest in the controversy is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action. Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295 (1958); Siler v. Superior Court, 83 Ariz. 49, 316 P.2d 296 (1957).

Southern Pacific's absence from the action presented no impediment to final adjudication of claims raised under the contract. It was not a party to the contract, nor was it to be involved in or affected to any substantial extent by this action. Its sole involvement with this action is that the water main is to be hooked into its water tank. Since water, to be drawn from the tank, is to be used solely for fire protection purposes the only time that the Company will draw water *through* Southern Pacific's tank is if a fire should break out in the Company's plant.

Clearly, the court could have and did enter a final judgment in the action, doing justice between the parties actually before the court, without injuriously affecting the rights of others. The fact that the court ordered the Town to commence construction of the water main from the Southern Pacific tank did not, in any sense of the word, make Southern Pacific an indispensable party.

III. The agreement violated Article 9, Section 7 of the Arizona Constitution.

Counsel for the Town contend that the Town cannot lawfully construct the water line without violating Article 9, Section 7 of the Arizona Constitution, A.R. This section provides, in essence, that a town may not make gifts, donations or grant subsidies to private enterprises, nor may it pledge its credit or invest public funds in any such private enterprise.

The evil sought to be avoided by this provision is the "depletion of the public treasury or inflation of public debt by engagement in non-public enterprise." State v. Northwestern Mutual Insurance Company, 86 Ariz. 50 at 53, 340 P.2d 200 at 201 (1959). Public funds are to be expended only for "public purposes" and cannot be used to foster or promote the purely private or personal interests of any individual. Proctor v. Hunt, 43 Ariz. 198, 29 P.2d 1058 (1934). In determining whether a proposed expenditure of public funds is constitutionally valid as being devoted to a public use or purpose no hard and fast rule can be formulated, and each such case "must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare." City of Glendale v. White, 67 Ariz. 231 at 237, 194 P.2d 435 at 439 (1948).

The argument advanced by the Town is that, since the water line would presently benefit only the Company, construction thereof would violate Article 9, Section 7. We cannot agree. Appellant overlooks the fact that ownership and control over the water line are to remain in the Town. And the fact that the Company stands to be

directly benefited in the event that a fire should occur at its plant and will be indirectly benefited by reduced fire insurance premiums, is of absolutely no consequence. Merely because an individual may indirectly benefit from a public expenditure does not create an illegal expenditure. There can be no doubt but that the supplying of water for purposes of preserving and protecting lives and property is a "public purpose" and one which will provide a direct benefit to the public at large.

IV. The agreement with the Company was in violation of A.R.S. §§ 9–514 through 9–516 and was, therefore, void.

■ We are referred to §§ 9–514 through 9–516 as standing for the proposition that these provisions require the Town to purchase the whole of the existing waterworks before it can lawfully begin construction of the water line. A brief reading of these sections discloses that they deal with the power of municipalities to engage in competition with businesses of a public nature. While these provisions would have been applicable had the Town sought to enter into competition with the existing waterworks, such is clearly not the situation in the case at bar. We find no merit to this contention.

V. Failure of the Town to comply with A.R.S. § 42–303, subsec. D [3] resulted in a void contract, and the Town was not estopped from asserting the illegality of the agreement as a defense to liability thereon.

■ The Town argues that since the agreement to construct the water line was entered into during the fiscal year 1966–1967, a year in which no funds were budgeted for such purpose, the agreement was in violation of A.R.S. § 42–303, subsec. D and was, therefore, void ab initio.

With this contention, we cannot agree. Quite obviously, funds for construction of the water line had not been budgeted for the fiscal year 1966–1967, since the Town never considered nor was it confronted with the problem until May and June of 1967, approximately one month prior to the beginning of the 1967–1968 fiscal year—the year in which funds were made available.

Mr. John F. Lucas, the certified public accountant who prepared the Town's annual budget, testified that funds for construction of the water line, while not budgeted for the earlier fiscal year, were made available for the succeeding year; the year in which construction was to begin:

"Q  Do you know of your own knowledge whether or not the Town of Gila Bend go [sic] to the Tax Commission to get these funds either in the fiscal year of '66–'67—just let's take that year—did they go to the Tax Commission in '66–'67 to see about getting funds?

A  For the water line?

Q  Yes.

A  Not to my knowledge.

Q  Did they do so in the fiscal year '67–'68?

A  No, sir.

Q  Now, you have mentioned that there was to be some money budgeted in the Public Works payroll for a loan, is that right?

A  Yes.

Q  How much was that loan, if you know?

3. A.R.S. § 42–303, subsec. D, provides as follows:
"D. No expenditures shall be made for a purpose not included in such budget, and no expenditure shall be made, nor debt, obligation or liability incurred or created in any fiscal year in excess of the amount specified for each purpose in the budget for such fiscal year as finally adopted except when authorized under and pursuant to the provisions of § 42–308, whether or not the county, city or town has at any time received, or has on hand, funds or revenue in excess of those required to meet expenditures, debts, obligations, and liabilities incurred under such budget. As amended Laws 1957, Ch. 89, § 3."

A  I believe the amount that was set up in the Public Works, as a part of the Public Works budget was $7500, which was the amount estimated to be required to make twelve monthly payments plus the interest on a $35,000 five year loan.

Q  In other words, we are talking about the money put in the Public Works for '67–'68? You are talking about just one year's payment?

A  Yes.

Q  Then, as I understand your testimony the next four years will be budgeted in those four years' Public Works?

A  That's right.

Q  That calls for sufficient funds to pay the whole thing?

A  Yes."  [R.T. at 220–221]

This Court has, on numerous occasions, held that the legislature's purpose in enacting § 42–303 was to require all counties, municipalities and towns to "pay as they go, to place them on a cash basis", City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1 at 9, 164 P.2d 598 at 603 (1945); American-LaFrance and Foamite Corporation v. Phoenix, 47 Ariz. 133, 54 P.2d 258 (1936), and then "to maintain them so by prohibiting the incurring of any indebtedness in any fiscal year, unless funds had been first provided to meet it." Bank of Lowell v. Cox, 35 Ariz. 403 at 410, 279 P. 257 at 260 (1929). The agreement in the case at bar has, in no manner or form, violated legislative intent or purpose. The agreement was entered into with the understanding that funds would have to be made available for it. And since the new fiscal year was already upon it, the Town apparently thought it more advisable to provide for the proposed expenditure in the new budget, then being prepared, rather than making application to the State Tax Commission (pursuant to A.R.S. § 42–308) for authorization to incur an additional liability. Having already declared an emergency to exist, it would have been a simple matter for the Town to have made application to the Commission to exceed its current year's budget. Permission would, without doubt, have been granted.

In Parrack v. City of Phoenix, 86 Ariz. 88, 340 P.2d 997 (1959), we held that where a municipal ordinance, under which city firemen were entitled to pay raises, covered a part of two different fiscal years from the time of its enactment to the time of its repeal, failure of the City of Phoenix to provide for this wage increase in its budget for the first fiscal year would not require the salary increase to be effective in the second year only; and failure to make budgetary provision for the salary increase would not excuse the city council from paying the salary increase, since the council's inaction could not defeat the rights of those who had not slept on their rights. There we found the city's argument "unimpressive":

"The City points out that obviously no provision was made in its budget for the fiscal year 1957–1958 to cover the increased wages due for the period March 6th to June 30th, and hence in any event it asserts the ordinance, if held valid, should not be construed to make the salary increases effective prior to July 1, 1958. Furthermore it appears that the City failed to make budgetary provision for the increased salaries due in the fiscal year 1958–1959. Because of the matter of budget limitations the City now contends it is unable to pay the increases due under the terms of the ordinance. We are not impressed with either contention. Had the city council when it passed ordinance G–245 in February, 1958, faced realities it could doubtless have obtained leave from the State Tax Commission to exceed its budget for that fiscal year under the provisions of A.R.S. §§ 42–304 and 42–308." 86 Ariz. 88 at 91–92, 340 P.2d 997 at 999.

The Company's position in the case at bar is even stronger, for funds were actually made available for construction of the water line.

We believe that under the particular circumstances of this case, both justice and

public policy demand that the Town be ordered to forthwith proceed with construction and installation of the water line. The Town's obligation to do justice by carrying out its part of the bargain "is as great as that of an individual or business corporation, and we find no legal impediment in requiring it to do so." County of Greenlee v. Webster, 30 Ariz. 245 at 252, 246 P. 543 at 545 (1926). It would be grossly unfair to all concerned to allow the Town to idly sit back and reap the benefits of its bargain without requiring it to pay accordingly.

Relative to the contention that estoppel and waiver cannot be used to prevent the Town from asserting the illegality of a contract, we agree. In the instant case, however, the agreement was not illegal.

■ In a proper case, the principles of waiver and estoppel cannot be applied to circumvent stated legislative intent and policy, nor can a contract which violates A.R.S. § 42–303, subsec. D and is, therefore, void ab initio be ratified or approved *in any manner* by defendant or its officers or any other person so as to create an enforceable liability. City of Phoenix v. Kidd, 54 Ariz. 75, 92 P.2d 513 (1939).

VI. No competent evidence of damages was presented to the lower court.

■ The Town claims that the trial court erred in basing damages on the amount of increased insurance premiums which the Company was required to pay as a direct result of the Town's failure to provide the water line. We find that the lower court correctly assessed the damages suffered by the Company as a direct result of the Town's breach of the contract.

Relative to the Town's denial that a contract existed and its assertion that the agreement was not specifically enforceable, we find no merit whatsoever.

■ The lower court properly entered judgment in favor of the individual defendants (members of the Town Council). Having acted in good faith, and we assume that they did, there is no personal liability. Sims Printing Company v. Kerby, 56 Ariz. 130, 106 P.2d 197 (1940).

In accordance with the foregoing, judgment of the lower court is affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.