[Civil No. 4611.   Filed November 20, 1944.]

[153 Pac. (2d) 537.]

SOUTH SIDE DISTRICT HOSPITAL, a Corporation, Appellant, v. PHILIP F. HARTMAN, in His Own Behalf and in Behalf of Others Similarly Situated, Appellee.

Messrs. Sloan, Scott & Green, and Mr. Albert W. Gurtler, for Appellant.

Mr. Mark Wilmer, for Appellee.

ROSS, J.—This action was brought by Philip F. Hartman, a resident and taxpayer of the City of Mesa, in his own behalf and in behalf of others similarly situated, to secure a declaratory judgment as to whether the lease arrangement between the South Side District Hospital, a corporation, and the city of Mesa is legal and permissible under the law.

The City of Mesa is now and has been during all the times herein mentioned the owner of lot 5 and part of lot 6, in block 35, in said city. In 1923 the buildings on said lots were used by the city for hospital purposes, and have been used continuously for such purposes ever since. From time to time during that period and to the present time there have been added housing facilities and equipment, some by personal donations, some by corporations, some by the federal government, and some by the hospital, so that at the time this action was brought the hospital plant and equipment were estimated to be worth something like $100,000.

The city, except for a short time after it acquired title to the property, has never operated the hospital, that being done by the South Side District Hospital under a more or less loose arrangement. On May 10, 1935, the city, in a written lease, leased to the South Side District Hospital the hospital property and equipment for a recited consideration of $1 per year. In such lease it was stipulated that the hospital should be "a community hospital for the use and benefit of the inhabitants of the City of Mesa and surrounding community"; that the charges for accommodations therein would be "reasonable and equal to all patrons" and that all physicians and surgeons conforming to reasonable rules and regulations might practice there. Other provisions were that lessee pay any debts contracted by it in the operation of plant, maintain the buildings in good condition and repair, replace furniture or equipment lost or destroyed, and conduct the business on a non-profit basis and for the benefit of the community.

It was provided that lessee might accumulate the necessary reserve to meet the contingent obligations, to pay the employees and servants according to the usual standard, make charges and accumulate such funds as necessary to comply with the requirements to secure financial aid from the National Housing Administration. The above covenants on the part of the lessee were not all, but were the essential ones.

On April 14, 1937, the lessor, City of Mesa, for a consideration of $2, extended the above lease to and until November 1, 1940, and on August 11, 1941, for a consideration of $2, such lease was extended to and until November 1, 1942.

Plaintiff in his complaint filed in October, 1941, alleges that the reasonable annual rental value of the hospital plant is $4,000; that the lease made in 1935 was made without advertisement for bids, as pro-

vided by law; that the hospital is not operated as a public hospital, available to all the residents of Mesa and vicinity willing to pay reasonable value for services, but that the South Side District Hospital arbitrarily excludes residents and taxpayers of the aforesaid city and vicinity willing to pay reasonable charges for its facilities, unless attended by a medical doctor or physician "as distinguished from a doctor of osteopathy"; that such arrangement constitutes a donation or grant to said South Side District Hospital, contrary to the constitution and statutes of the state; that there is no statute of the state authorizing such arrangement. The court was asked to declare such arrangement to be in violation of the law and of the state constitution.

The City of Mesa and the South Side District Hospital, by their separate answers, put in issue most of the allegations of the complaint, and especially the legal deductions of the plaintiff. They justify the leasing of the hospital and its equipment under the law as it existed at the time of the execution of the lease and under the provisions of chapter 10 of the First Special Session of the Fifteenth Legislature, being "An Act relating to public health; empowering towns to own and operate hospitals and validating prior actions, and amending Article 2, Chapter 16, Arizona Code of 1939, by adding section 16–207a," reading so far as material as follows:

"16–207a. *Operation of hospital.* The common council shall have power to own, operate, and control hospitals in the interest of the general welfare. The common council may lease a hospital owned or controlled by it to a non-profit association or corporation organized under state law, on such terms and conditions, and for such consideration, as the common council may prescribe.

"Sec. 2. *Validation of prior operation of hospital.* The ownership, operation, leasing, or control of a

hospital by any municipality operating under the common council form of government before this Act takes effect is validated.''

The trial court, after hearing the evidence bearing upon the issues made by the pleadings, entered its judgment to the effect that all of the property involved, lots, buildings, improvements, furnishings, equipment, real and personal, and the income therefrom belonged to the City of Mesa, and that the management and control thereof by the South Side District Hospital was illegal and without authority of law; that the lease under which said defendant was operating the hospital constitutes a grant and loan of the credit of the City of Mesa, in violation of Section 7, Article IX, of the state constitution; and that it is the duty of the City of Mesa to take possession of said property and to operate and use the same in conformity with the law.

From this judgment the South Side District Hospital has appealed. The other defendant, City of Mesa, has not appealed. The controversy on this appeal then is between plaintiff and defendant South Side District Hospital.

■■ A considerable portion of the evidence and the points of law urged in this appeal concerns the legality of the lease of the hospital by the city. It is contended that the city's powers in that regard, if any it has, are statutory. This, we think, is true. Whether the city in 1923, when it purchased the property and commenced its operation as a community hospital, had authority under the statute to do it, may be seriously questioned, but there is little doubt that the curative act (chapter 10) passed by the first session of the fifteenth legislature undertook in very plain and explicit language to give cities operating under a common council form of government power to own and operate hospitals in the in-

terest of the general welfare, and also to authorize a town owning a hospital to lease it to a non-profit association or corporation organized under the laws of the state, *on such terms and for such consideration as the common council may prescribe.* Section 2 of the same act is curative in its nature and undertakes to ratify and validate acts of such municipalities carried on before its passage. We think there can be little doubt as to the legality of this legislation. Indeed, neither of the parties hereto question it seriously. If the legislature could pass legislation authorizing a municipality to acquire and operate a hospital either by itself or a corporation acting under it, then we think it had the power to validate what the municipality and the people of Mesa have done. *Palmcroft Dev. Co.* v. *City of Phoenix,* 46 Ariz. 200, 49 Pac. (2d) 626, 103 A. L. R. 802; *Snidow* v. *Montana Home for Aged,* 88 Mont. 337, 292 Pac. 722; 6 R. C. L. 321, sec. 310 and cases there cited.

In view of the very praiseworthy and laudable object sought by the City of Mesa to be accomplished for the benefit of that community, we think the law should be sustained unless there is some very plain provision in the constitution against it. The fact that the city has undertaken to employ an agent in carrying on this laudable enterprise does not change the rule. It is said in 19 R. C. L. 717, sec. 25:

" . . . The purpose is none the less public if the institution is constituted a corporation separate from the municipality provided the corporation is a public and not a private one, and is under a legal obligation to serve the public, and its officers are chosen, directly or indirectly, by the public and not by private individuals or associations. . . . "

In the articles of incorporation of the South Side District Hospital it is recited that its purpose is "to provide and maintain a non-profit sharing hospital; that the management of its affairs shall be in the

hands of seven trustees selected from the communities of Mesa, Chandler, Gilbert and Tempe.'' The actual practice was that when a vacancy occurred in the board of trustees to consult the outgoing member's community and fill the vacancy from advice of the citizens thereof. At the time of the trial the board consisted of four members from Mesa, two from Chandler and one from Tempe. The members so chosen were not only outstanding in their respective communities, but were *de facto* members of the board if not *de jure*. While this informal method of selecting trustees may not have been in strict accordance with the law, no one ever questioned it until now.

In the lease contract dated May 25, 1935, between the City of Mesa and the South Side District Hospital, is found this provision:

''It is understood and agreed by and between the parties hereto, that the said hospital shall not be conducted for the profit of the second party and/or its officers, directors or agents, but that said hospital shall be conducted as a nonprofit organization for the benefit of the community. Provided, however, that party of the second part shall have the right to accumulate such reserves as may be necessary or desirable for the purpose of meeting its obligations and contingent obligations. And provided further, that nothing herein contained shall prevent second party from paying to its employees and servants reasonable compensation for work and services rendered to the second party, according to the usual standards applicable to the work or services performed.''

The court in its judgment decided that any income from the operation of the hospital belonged to the city and not to the South Side District Hospital.

The appellant in its brief says this:

'' . . . Whether expressly so declared in said leases or not, it has been the intention of the parties, shown beyond the shadow of a doubt by their acts and con-

duct, that the entire net income of such hospital corporation should be devoted and applied to the erection of necessary additions and improvements, and that the same should become the property of the city. . . . ''

There is not a shred of evidence that the South Side District Hospital, or any of its officers or its trustees, has ever received a cent out of the moneys received in the operation of the hospital. Indeed, the whole evidence shows that such moneys have been used in the enlargement of the hospital and to purchase furniture and equipment, and to pay for medicine, necessary wages of active personnel, and such incidentals as necessary in the operation of a hospital.

The arrangement between the City of Mesa and the South Side District Hospital did not violate section 7, article IX of the state constitution, as held by the trial court. The city, under the facts, did not lend its credit to the hospital. The hospital's services were rendered in behalf of the city without compensation or remuneration, except for necessary outlays in its operation. The arrangement under which the hospital operated being legal, the direction of the judgment that the City of Mesa take possession of the hospital and operate it, was erroneous.

Although the complaint charged that use of the hospital and its facilities were denied to persons entitled thereto, and to doctors other than those duly licensed and practicing medicine and surgery, the court made no findings thereon and made no mention thereof in its judgment. The plaintiff and appellee has not cross-appealed from the judgment and we will not discuss the questions raised by pleadings but not decided by the court below.

We think the judgment should be reversed, and it is so ordered.

McALISTER, C. J., and STANFORD, J., concur.