718 P.2d 478

**John KROMKO, Petitioner,**

v.

**The ARIZONA BOARD OF REGENTS and University Medical Center Corporation, Respondents.**

**No. 18520–SA.**

Supreme Court of Arizona,
In Banc.

April 28, 1986.

Sean Bruner and Daniel F. Davis, Tucson, for petitioner.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo by Michael J. Meehan, Tucson, for respondent University Medical Center.

Jacqueline Schneider, Phoenix, for respondent Bd. of Regents.

**SPECIAL ACTION**

HAYS, Justice.

Petitioner, John Kromko, brought this special action to challenge the legality of a lease transaction between the Arizona Board of Regents (Board) and University Medical Center Corporation (UMCC), covering the operation of the University of Arizona Hospital. Petitioner alleges that the lease violates Ariz. Const. art. 9, § 7. We accepted jurisdiction pursuant to Ariz. Const. art. 6, § 5 and Rule 8, Arizona Rules of Procedure for Special Actions, 17A A.R.S. After hearing the matter, this court found that the lease did not violate the Arizona Constitution and ordered that the relief sought by petitioner be denied. The order further provided that a written opinion would follow. The following is that opinion.

On November 5, 1984, the Board entered into a lease and conveyance agreement by which the University of Arizona Hospital (presently known as the University Medical Center) would be operated by UMCC, a nonprofit corporation. The hospital, generally recognized as a teaching hospital, is located on the University of Arizona campus and is a part of the Arizona Health Sciences Center. The Center also contains the University's colleges of medicine, nursing and pharmacy. Under the terms of the agreement, the land underlying the Arizona Health Sciences Center is leased to UMCC, while the building and other improvements are conveyed to UMCC. Separate agreements cover the physical division of space between the hospital and the colleges.

Prior to the lease, the University of Arizona Hospital was subsidized by appropriations from the general fund of the State of Arizona. This annual appropriation equaled the difference between the hospital's total operating budget and the estimated revenues from hospital operations. In early 1984, the Board was presented with various reports concerning the feasibility of

maintaining this annual appropriation. These reports indicated that due to the extraordinary costs associated with a teaching hospital, as well as the overall increase in health care costs, hospital appropriations could reach $20 million by 1986, and $36.6 million by 1990.

Following these reports, the Board, under the authority of A.R.S. § 15–1637, entered into the lease and conveyance agreement with UMCC. By conveying University Hospital to a nonprofit corporation, the Board believed that: (1) "management would be better able to respond effectively and rapidly to the new health care environment, exercising options such as forming partnership agreements, consolidating services, developing new product lines consistent with the hospital's mission, and utilizing existing assets to borrow funds or otherwise incur debt to assist in operations"; (2) the annual "residual deficit appropriation" to the hospital could be replaced by a teaching appropriation to the College of Medicine based on a capitation method, and, (3) the Board could ensure the continued viability of University Hospital as a clinical teaching and research center as well as a quality health care provider.

Attached to the lease and conveyance agreement is a document entitled "Educational Agreement." This agreement states that UMCC will remain a teaching hospital, "providing opportunities for the educational and research programs of the health colleges ... within the University." The agreement also contains a clause through which UMCC agrees that patient revenues will not be used to finance the Health College programs and, conversely, that appropriations received by UMCC to support educational activities will not be applied to patient care. In sum, UMCC agreed to "remain economically sound."

As consideration for the lease and conveyance agreement, UMCC agreed to assume existing liabilities of $11,757,908.00 and to pay a base rental fee of $10.00 per year. Additional rent could be imposed in the amount of any obligation of UMCC which the Board chooses to, or is compelled to, pay as a result of UMCC's failure to satisfy the obligation. At the time the lease was entered into, the land and improvements comprising University Hospital were valued at approximately $50 million. The equipment in the hospital was valued at approximately $7.8 million. Based on these figures, petitioner claims that the lease between the Board and UMCC constitutes a "subsidy" or "donation" of state property to a corporation in violation of the Arizona Constitution. We do not agree.

Article 9, section 7, of the Arizona Constitution provides:

Neither the State, nor any county, city, town, municipality, nor any other subdivision of the State, shall ever give or loan its credit in the aid of, or *make any donation or grant, by subsidy or otherwise,* to any individual, association, or corporation, ... (emphasis added).

Petitioner urges that the plain language of this constitutional provision militates against the validity of the lease before us. He maintains that the "facial appearances of public purpose or benefit" recited in this lease is of no consequence at all. In fact, petitioner claims the lease is invalid irrespective of any public purpose that could possibly be served by the transaction. In so arguing, however, petitioner again fails to consider the effect of A.R.S. § 15–1637. That statute provides that the Board may lease real property owned by it to a nonprofit corporation, as lessee, for the purpose of operating a health care institution. In other words, our legislature, by providing for the type of transaction at issue, has statutorily recognized the public benefit of having a nonprofit corporation provide health care to the community. After carefully reviewing this statute, and the corresponding lease, we find that neither the letter nor the spirit of the constitutional provision has been violated.

The purpose behind article 9, section 7 is to avoid the "depletion of the public treasury or inflation of public debt by engagement in non-public enterprise." *Town of Gila Bend v. Walled Lake Door Co.,* 107 Ariz. 545, 549, 490 P.2d 551, 555 (1971), citing *State v. Northwestern Mutual Insurance Co.,* 86 Ariz. 50, 53, 340 P.2d 200, 201 (1959); *see also City of Tempe v. Pilot Properties, Inc.,* 22 Ariz.App. 356, 360, 527

P.2d 515, 519 (1974). "Public funds are to be expended only for 'public purposes' and cannot be used to foster or promote the *purely private or personal interests of any individual.*" (Emphasis added.) *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. at 549, 490 P.2d at 555.

In the instant case, it cannot be seriously contended that the existence of UMCC as a nonprofit hospital does not serve a public purpose. In fact, this court has previously recognized the public good and general welfare served in the operation of a community hospital by a nonprofit corporation. *South Side Dist. Hospital v. Hartman*, 62 Ariz. 67, 153 P.2d 537 (1944) (City of Mesa's lease of hospital property and equipment to Southside Dist. Hospital, a nonprofit corporation, for a recited consideration of $1 per year held not violative of article 9, section 7).

Moreover, no "private or personal interests of any individual" will be served by the operation of the hospital under this lease. This conclusion is evident if one reviews its corporate structure under the enabling statute.[1] For example, the internal organization of the nonprofit corporation requires the approval of the Board of Regents, the appointment by the Regents of UMCC's board of directors, and the composition of the UMCC board of directors must meet set limitations. In addition, the Regents retain the right of approval before the nonprofit corporation may enter into any business transaction that could adversely affect the interests of the state, or before its bylaws or articles of incorporation may be amended. The statute also requires that the nonprofit corporation exercise only those governmental powers delegated to it by the Board and which are necessary to satisfy the requirements of § 103 of the Internal Revenue Code (tax-exempt status).

The nonprofit corporation is also required by the statute to make semiannual progress reports on its financial status to the Board and various state officials. This includes an independently audited financial statement to the auditor general within ninety days of the close of each fiscal year. Most importantly, however, no earnings of the nonprofit corporation, other than reasonable compensation for services, shall be distributed to the corporation's members, directors or officers. Moreover, upon dissolution or liquidation, all net assets of the nonprofit corporation shall revert to the Board or its successor.

In other words, UMCC is an independent corporation, free to operate in a competitive market without the normal constraints usually placed on the state. Nevertheless, its operations are still subject to the control and supervision of public officials. Hence, we believe the fear of private gain or exploitation of public funds envisioned by the drafters of our constitution is absent under both A.R.S. § 15–1637 and the lease.

This brings us to the main thrust of petitioner's argument. A.R.S. § 15–1637(A) contains a provision that if the lease improvements are "conveyed to the nonprofit corporation, they shall be *presumed* to have been conveyed for their then fair market value (emphasis added)." Petitioner, however, would rather have us use the test for consideration set forth in *Wistuber v. Paradise Valley Unified School District*, 141 Ariz. 346, 687 P.2d 354 (1984). In *Wistuber*, this court was presented with an agreement between a school district and a teacher's association in which the district released the association's president from teaching duties but continued to pay a portion of the president's salary for services rendered to the district.

In determining whether there was adequate consideration under article 9, section 7, this court was faced with two conflicting appeals court decisions. In *Heiner v. City of Mesa*, 21 Ariz.App. 58, 515 P.2d 355 (1973), city officials leased approximately 10 acres of land to a private, nonprofit hospital without any cash consideration. In upholding the lease against constitutional attack the appeals court stated:

> The public benefit [in the establishment and operation of health care facilities]

1. There appears to be no dispute that the lease and UMCC's articles of incorporation and by-laws conform to the organizational requirements of A.R.S. § 15–1637.

removes the contemplated deed from the restrictions of § 7 of Article 9 of the Constitution *and constitutes a valid and valuable consideration under the circumstances presented to us in this case.* *Heiner v. City of Mesa,* 21 Ariz.App. at 64, 515 P.2d at 361 (emphasis added). In the second case, *City of Tempe v. Pilot Properties, Inc., supra,* city officials attempted to lease property to a professional baseball team in return for a rental fee of $1 per year and an agreement to build a municipal baseball park. The appeals court remanded the matter and held that merely because the private entity "uses public funds or property for a 'public purpose' is not sufficient in and of itself to remove that use from the [art. 9, § 7] provisions." *City of Tempe v. Pilot Properties, Inc.,* 22 Ariz. App. at 362, 527 P.2d at 521. The court added that the consideration must not be so "inequitable and unreasonable" as to amount to an abuse of discretion. *Id.* at 363, 527 P.2d at 522, quoting *City of Phoenix v. Landrum & Mills Realty Co.,* 71 Ariz. 382, 388, 227 P.2d 1011, 1014 (1951).

In reconciling these two cases, this court stated:

> We believe the Pilot Properties Rule to be the better one. The public benefit to be obtained from the private entity as consideration for the payment or conveyance from a public body may constitute a "valuable consideration" but the Constitution may still be violated if the value to be received by the public is far exceeded by the consideration being paid by the public.

*Wistuber v. Paradise Valley Unified School District,* 141 Ariz. at 349, 687 P.2d at 357. Based on this holding, petitioner delves into a detailed analysis of facts and figures relating to the consideration involved in the UMCC lease. While we believe that *Wistuber* is still good law, we find that by its own language it is inapplicable in the present case:

> While *Heiner* and *Pilot Properties* are facially inconsistent concerning the adequacy of consideration necessary to comply with art. 9, § 7, *Heiner* may be confined to the "special case" of a municipal-

ity's relationship to a non-profit hospital.... Thus, *Heiner* was based on statutory public policy as well as art. 9, § 7 and reflected the judiciary's long-held accordance of a special status to hospitals as "charitable institutions" operated solely for the public good ... (citations omitted).

*Wistuber v. Paradise Valley Unified School District,* 141 Ariz. at 349 n. 4, 687 P.2d at 357 n. 4. Thus, we are left with the statutory presumption that the property leased by the Board to UMCC was for its "then fair market value."

The evidence before this court supports that presumption. By leasing University Hospital to a self-sustaining corporation, the need for public funds to recoup losses of between $20 million and $36 million *per year* has been eliminated. Thus, substantial monetary benefits have in fact accrued to the Board and, therefore, the State of Arizona. In addition, by leasing the hospital to a corporation over which it also retains sufficient control, the Board can guarantee the perpetuation of the critical educational relationship between the hospital and the University of Arizona College of Medicine. Although this benefit is nonpecuniary, it nonetheless may be viewed as consideration.

As we find that the agreement (1) serves a statutorily recognized public purpose, and (2) constitutes neither a donation nor a subsidy to a private corporation, we hold that the lease and conveyance agreement between the Arizona Board of Regents and University Medical Center Corporation is not in violation of article 9, section 7 of the Arizona Constitution.

Relief denied.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, J., concur.

Note: Justice STANLEY G. FELDMAN did not participate in the determination of this matter.