NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

NEPTUNE SWIMMING FOUNDATION, *Plaintiff/Appellant,*

*v.*

CITY OF SCOTTSDALE, *Defendant/Appellee.*

No. 1 CA-CV 21-0053
FILED 3-9-2023

---

Appeal from the Superior Court in Maricopa County
No.  CV2019-007172
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

---

COUNSEL

Goldwater Institute, Phoenix
By Jonathan Matthew Riches, Timothy Sandefur
*Co-Counsel for Plaintiff/Appellant*

DL Hall Attorney PLLC, Scottsdale
By Dennis L. Hall
*Co-Counsel for Plaintiff/Appellant*

Scottsdale City Attorney's Office, Scottsdale
By Eric C. Anderson
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

**¶1** Neptune Swimming Foundation ("Neptune") sought mandamus, declaratory, and monetary relief stemming from Scottsdale's failure to award Neptune a license to operate a youth competitive swimming program in Scottsdale's facilities. Neptune now challenges the superior court's entry of judgment for Scottsdale. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Scottsdale's Parks and Recreation Department maintains various recreational facilities, including four aquatic centers. Scottsdale opens its aquatic centers for public swimming, swim lessons, and youth competitive swimming. Youth competitive swim teams can use the aquatic centers only after the team's sponsor obtains a revocable license from Scottsdale.

**¶3** Scottsdale Aquatic Center ("SAC") and Neptune operate comparable youth competitive swimming programs. SAC is the only competitive swim team Scottsdale has allowed to use its aquatic centers for over 50 years. Scottsdale and SAC entered the most recent iteration of this arrangement in 2016 when SAC received a revocable license ("2016 License"). The 2016 License contained an initial three-year term with two consecutive one-year options. The 2016 License required SAC to pay: $3 per hour for short course lap lanes, $7 per hour for long course lap lanes; $3,150 per year for office space; $1,400 per year for storage space; and additional operating fees. Scottsdale's City Council set the lap lane fee rates and increased those rates in May 2019.

**¶4** In August 2017, Neptune's counsel sent Scottsdale's mayor a letter objecting to the 2016 License. Neptune asserted that the 2016 License violated the Scottsdale Charter and Arizona Constitution because "[t]he grant was made at significantly below market rates and without compliance

with open bidding." Scottsdale disagreed with Neptune's assertions but developed a procurement process for the next available license.

¶5 In January 2018, Scottsdale published its Request for Proposal ("RFP"), explaining the procurement process and presenting the license terms. The RFP included a provision stating "all procurement activities . . . are in conformance with the rules and regulations of the Scottsdale Procurement Code" ("Code"). The Code directs procurement awards be made to the most advantageous bidder. Code § 2-188(c)(5). The RFP provided Scottsdale's five weighted evaluation criteria and other factors the scoring committee could consider, which included: revenue; the bidder's experience; the bidder's ability and willingness to meet the listed specifications and standards; and the quality of the bidder's proposal and other presentation materials. The RFP's bidding process description included notice that "[b]idders may be invited to make a presentation on their proposals."

¶6 Scottsdale selected three disinterested city employees to serve on the scoring committee. Only SAC and Neptune submitted bids and the scoring committee selected SAC as the most advantageous bidder; SAC received 31.75 more points than Neptune. Scottsdale provided its Notice of Intent to Award the license to SAC in March 2018. Neptune formally protested the RFP results, but Scottsdale dismissed that protest because it believed "the recommended award to [SAC] as the most advantageous Contractor . . . met all Procurement Code rules and procedures."

¶7 Neptune then notified Scottsdale that the scoring committee miscalculated the point totals. Per the corrected scores, Neptune received .75 more points than SAC. Scottsdale agreed that it miscalculated the bid totals and identified additional bid evaluation anomalies. Scottsdale then invited both SAC and Neptune to give presentations on their proposals. Neptune protested Scottsdale's decision to reconvene the scoring committee and invite the bidders to give presentations, arguing the Code required Scottsdale to instead award Neptune the license.

¶8 Scottsdale responded that the Code did not bind the RFP because it did not involve Scottsdale "purchasing materials, services, or construction and this is not a City-mandated or City-sponsored program." Scottsdale then canceled the RFP on May 11, 2018, rescinding its Notice of Intent to Award the license to SAC. Instead, Scottsdale exercised the first one-year extension option under SAC's 2016 License.

¶9 To set the fees for the extension, the Scottsdale City Council reviewed data for swim lane access in other Arizona municipalities such as fees, quality, operating expenses, and how the city and licensee divide expenses. The surveyed cities' lane pricing ranged from $1 (in Marana) to $15 (in Chandler) per lane per hour. Scottsdale set the new fee at $8 per lane per hour for the long course and $4 for the short course.

¶10 In May 2019, Neptune filed a complaint seeking a writ of mandamus compelling Scottsdale to award Neptune a license under the RFP. Neptune alternatively alleged a violation of the Gift Clause, claiming the 2016 License is not supported by adequate consideration given Neptune's bid for a higher rate per lane hour. Neptune's remaining claims asserted Scottsdale caused Neptune money damages by failing to follow the bidding process.

¶11 Neptune and Scottsdale filed competing motions for summary judgment. Neptune argued that Scottsdale abused its discretion by abandoning the RFP, thus violating the Code, and that the 2016 License violated the Gift Clause. Scottsdale argued it used the Code only as a guide, as the Code did not otherwise apply to the RFP. Scottsdale nonetheless contended that cancelling the RFP did not violate the Code. Scottsdale asserted the statute of limitations barred Neptune's Gift Clause claim and alternatively claimed the 2016 License met the Gift Clause's requirements.

¶12 The superior court granted summary judgment in Scottsdale's favor. The court found Scottsdale's decision to cancel the RFP did not violate the Code, nor was it arbitrary and capricious. The court reasoned that because the RFP sought the "most advantageous" bid, not the highest bidder, once a bidder raised concerns about the scoring committee's calculations, Scottsdale could request presentations and seek "a consensus of committee members." The court concluded that Neptune "failed to continue with the process" by objecting to the presentation invitation, and Scottsdale acted within its discretion to cancel the RFP.

¶13 The superior court found no Gift Clause violation but did not address Scottsdale's statute of limitation defense to that claim. The court ruled that the recreational services provided under the 2016 License serve a public benefit and that "[j]ust because Neptune agreed to pay more [per swim lane] does not mean that the [2016 License] is so inequitable that it amounts to a subsidy."

¶14 Neptune timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶15        Neptune argues the superior court erred in granting summary judgment to Scottsdale on the Gift Clause claim and upholding the contract award to SAC. We review the court's grant of summary judgment *de novo*, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 55, ¶ 9 (2022).

**I.        Mootness and Statute of Limitations**

¶16        Scottsdale argues that this appeal is moot because the license pursued by the swim organizations would expire by the conclusion of the appeal. Arizona courts may consider an appeal either of great public importance or an issue "capable of repetition yet evading review." *Phoenix Newspapers, Inc. v. Molera*, 200 Ariz. 457, 460, ¶ 12 (App. 2001). Failure to follow a city procurement code and applicability of the gift clause to situations in which the city takes a less lucrative deal is capable of repetition.

¶17        Scottsdale also argues that the statute of limitations bars Neptune's suit because Neptune had one year under A.R.S. § 12-821 to file suit, Neptune was aware of the 2016 License no later than August 8, 2017, and did not file until May 3, 2019. But Scottsdale ignores its own conduct inducing Neptune to delay suit by offering the RFP process. *See Nolde v. Frankie*, 192 Ariz. 276, 279–80, ¶¶ 13–14 (1998) (a defendant who induces plaintiff to delay filing suit cannot then rely on a statute of limitations "as a shield for inequity"). Scottsdale did not cancel the RFP process Neptune participated in until May 11, 2018, and Neptune filed its complaint within one year. This appeal is not moot or time barred.

**II.        Procurement Code**

¶18        Scottsdale attempts to avoid Neptune's procurement code challenges by contending the Code applies only to purchases of materials, services, and construction made with public funds. Even if we read the Code as ordinarily inapplicable to the transactions contemplated by the RFP here, Scottsdale explicitly held out the RFP as subject to the Code. But assuming, without deciding, that the Code applies, Scottsdale abided by the Code when it canceled the RFP.

¶19        Neptune raises two challenges to the superior court's findings implicating the Code. First, Neptune claims Scottsdale violated the Code by requesting bidder presentations after the Notice of Intent to Award issued

and it raised the scoring discrepancy. Once Scottsdale acknowledged its miscalculation, Neptune argues, the Code required Scottsdale to award Neptune the license. Second, Neptune disputes the superior court's finding that Neptune "failed to continue with the [procurement] process."

¶20        The Code distinguishes between a Notice of Intent to Award and an actual award. *See*, *e.g.*, Code R2-188.23(B)(1) ("All Notices of intent to Award shall be posted for at least 7 days prior to the award."). Before the city awards a contract, an aggrieved bidder may protest an alleged Code violation, including whether the city correctly evaluated the bids. Code § 213(a). If the city manager or a designee sustains the protest, then "the Director shall implement an appropriate remedy." Code R2-213.2(A). Acceptable remedies include reissuing the solicitation, issuing a new solicitation, awarding a contract consistent with the Code, or "[s]uch other relief as is determined necessary to ensure [Code] compliance." Code R2-213.2(C)(1)-(4). "After opening of bids or proposals, but before award, a solicitation may be canceled if the Director determines that cancellation is advantageous to the City." Code R2-193.3(A).

¶21        After Scottsdale issued the Notice of Intent to Award to SAC, Neptune timely protested whether Scottsdale correctly evaluated the parties' bids. In response to Neptune's protest, Scottsdale corrected the scores. Scottsdale's director reconvened the scoring committee and invited the parties to give presentations. Both SAC and Neptune sent Scottsdale letters objecting to its plan. The director then canceled the RFP, stating, "[a]fter further review of this matter, it has been determined that it is in the best interest of the City to cancel the RFP."

¶22        The Code provides the director with discretion to cancel a solicitation if it is advantageous to Scottsdale, until it issues an award. Once Scottsdale sustained Neptune's protest for the miscalculation, the director could "implement an appropriate remedy," or cancel the RFP. *Id.* Here, the director first invited the parties to give presentations to the scoring committee. When both parties refused to participate, the director concluded that Scottsdale would benefit from cancelling that process altogether and reverting to the original license.

¶23        Neptune contends once Scottsdale accepted a bid it had to move forward with the RFP because all subsequent actions were necessarily ministerial. But Neptune's reliance on *City of Phoenix v. Wittman Contracting Co.* for that proposition is misplaced. In *Wittman*, Phoenix had to decide between two bids for construction of a water line. 20 Ariz. App. 1, 2 (1973). The court determined the city's remaining actions were necessarily

6

ministerial because Arizona law at the time required preference for parties that successfully performed previous public contracts. *Id.* at 5 (relying on A.R.S. § 34-241). In other words, the court's analysis rested primarily on a statute no longer in force. *See Big D Constr. Corp. v. Ct. of Appeals*, 163 Ariz. 560, 570 (1990) (A.R.S. § 34-241 violates the equal protection (art. 2, § 13) and special privileges (art. 4, pt. 2, § 19) provisions of Arizona's Constitution).

¶24 The *Wittman* court's additional authority—and Neptune's other primary authority for this argument—is similarly unpersuasive. In *Brown v. City of Phoenix*, the city considered competing bids for car rental businesses to lease space at the airport. 77 Ariz. 368, 371 (1954). The city awarded the lease to the "less favorable bidder," *id.* at 375, despite direction in the city charter to make the award to the "highest responsible bidder," *id.* at 370. Our supreme court determined that the city officials abused their discretion, and the court directed issuance of a writ of mandamus awarding the lease to the other bidder. *Id.* at 377. Critical to the court's conclusion, the city in *Brown* conducted a one-sided evaluation—it failed to investigate the reliability and capability of the competing bidder. *Id.* at 375. The city's exercise of discretion thus could not have been reasonable on a conclusion "in the best interests of the city, its citizens and taxpayers." *Id.* at 375.

¶25 Neptune suggests that, under *Brown*, Scottsdale necessarily acted arbitrarily by failing to accept Neptune's higher bid. But Scottsdale did not reject Neptune's higher bid and accept SAC's lower one as the city did in *Brown*. The Notice of Intent to Award the contract was not an acceptance and did not bind Scottsdale. *See* Code R2-201.1(A). Ultimately, the director decided to reconvene the scoring committee because the RFP process involved the mathematical error Neptune identified and some procedural anomalies. Specifically: the scoring evaluations failed to include some of the criteria identified in the RFP; using revenue as the primary factor undermined the fees already set by the city council; one response did not "contain a realistic estimate of lane utilization based on historic availability"; and the RFP did not make it clear whether the per hour fee included charges for staff time.

¶26 The director's decision to reconvene the scoring committee and receive the parties' presentations also falls squarely within the Code's broad, non-exhaustive list of available remedies. *See* Code R2-213.2(C). Even after choosing this remedy, the director was under no obligation to issue an award. *See* Code R2-193.3(A) (director may cancel a solicitation before an award if cancelation is advantageous to Scottsdale). Faced with objections by both parties to the proposed remedy, Scottsdale acted within

its authority by cancelling the RFP and reverting to the 2016 License. The superior court did not err in rejecting Neptune's procurement challenge.

## III.    Gift Clause

**¶27**        An Arizona city may not "make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. 9, § 7 ("Gift Clause"). "[T]he evil to be avoided [is] the depletion of the public treasury or inflation of public debt by engagement in non-public enterprises," *State v. Nw. Mut. Ins. Co.*, 86 Ariz. 50, 53 (1959), or "by giving advantages to special interests," *Schires v. Carlat*, 250 Ariz. 371, 374, ¶ 6 (2021) (quoting *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349 (1984)).

**¶28**        We apply a two-part test in evaluating a Gift Clause challenge. *Schires*, 250 Ariz. at 374, ¶ 7. First, we consider whether the benefit at issue serves a public purpose. *Id.* If so, we evaluate whether the public is paying far more in consideration than it receives in value. *Id.* at 375, ¶ 7. Our courts have applied this analysis even when cities receive rather than dispense funds. *See Kromko v. Ariz. Bd. of Regents*, 149 Ariz. 319, 322 (1986). Neptune contends Scottsdale's cancellation of the RFP lacked a public purpose and the court erred in its public purpose analysis. Neptune also argues the 2016 License lacked the requisite consideration and the court failed to determine the fair market value of the public's benefit.

## A.    Public Purpose

**¶29**        Government expenditures or benefits must be in pursuit of a public purpose. *Wistuber*, 141 Ariz. at 349. "[A] public purpose promotes the public welfare or enjoyment,"and can arise out of a direct or indirect benefit. *Schires*, 250 Ariz. at 375, ¶ 8 (citation omitted). The political branches of government are best suited to determine what purposes are public, and we afford them deference. *Turken v. Gordon*, 223 Ariz. 342, 349, ¶ 28 (2010).

**¶30**        Neptune argues that the court's public purpose review applies to Scottsdale's decision to cancel the RFP. But the RFP cancellation simply closed the city's procurement process and is not a "payment or conveyance." *Wistuber*, 141 Ariz. at 349. The "conveyance" is Scottsdale's pool facilities license to SAC. The license provides access to a venue for competitive swimming activities. These swimming activities provide a recreational service to members of the public. Neptune agrees that recreational services are a public benefit. The superior court did not err in

concluding that the 2016 License allowing SAC to offer its swimming activities served a public purpose. *See Schires*, 250 Ariz. at 375, ¶ 11.

## B.    Consideration

**¶31**        The "primary check on government expenditures for gift clause purposes" is whether the consideration for the transaction is sufficient. *Id.* at 376, ¶ 13. Government expenditures must not far exceed the consideration offered by the private entity. *Wistuber*, 141 Ariz. at 349. "[P]aying far too much for something effectively creates a subsidy from the public to the seller." *Turken*, 223 Ariz. at 350, ¶ 32. "Our inquiry, therefore, focuses on what the public is giving and getting from an arrangement and then asks whether the 'give' so far exceeds the 'get' that the government is subsidizing a private venture in violation of the Gift Clause." *Schires*, 250 Ariz. at 376, ¶ 14.

**¶32**        Neptune argues its offer to pay a higher rate per lane hour creates a subsidy to SAC of the difference between the two rates. But Neptune fails to properly identify the "give" and the "get" for purposes of our consideration analysis. As noted above, after the cancelled RFP process, Scottsdale reverted to the 2016 License. We do not review the failed RFP process resulting in no agreement; we instead evaluate the 2016 License—as extended in 2019—for potential Gift Clause infirmity. We find none.

**¶33**        Through the 2016 License, SAC agreed to pay Scottsdale the rates and fees established by the city council and subject to revision by the council. *Supra* ¶ 3. To establish a violation, Neptune must demonstrate that the "give" of the 2016 License to Scottsdale far exceeds any "get" the city received. And in evaluating Neptune's challenge, we do not defer to Scottsdale's "assessment of value but should instead identify the fair market value of the benefit provided to [SAC] and then determine proportionality." *Schires*, 250 Ariz. at 378, ¶ 23.

**¶34**        Neptune contends its higher offer establishes the market value of the license and it cites to cases defining fair market value in the deficiency judgment context for the proposition that its higher bid controls the consideration analysis at the fair market value stage. *See TCC Enters. v. Est. of Erny*, 149 Ariz. 257, 258 (App. 1986); *see also Honeywell Info. Sys., Inc. v. Maricopa Cnty.*, 118 Ariz. 171, 174 (App. 1977). But a governmental procurement process is unlike a judicial decision-making process. Each process is governed by different statutes and controlled by different policy rationales. *Compare MidFirst Bank v. Chase*, 230 Ariz. 366, 368, ¶ 7 (App. 2012) (citation omitted) (the goal of the deficiency judgment statute is to prevent

a "windfall" to a real property purchaser), *with Schires*, 250 Ariz. at 378, ¶ 23 (goal of Gift Clause fair market value judgment is determining "proportionality" of cost to benefit).

¶35 Neptune would have us hold that the monetary value of unsuccessful bids on government contracts establishes the standard by which we judge reasonable consideration. *Schires* tells us we must identify the objective fair market value and in this case—unlike in *Schires*—the city actually provided the evidence from which the superior court could evaluate proportionality. *See supra* ¶ 9. Notably, the range of fees that the city considered started well below its 2016 fee structure and continued to above Neptune's bid.

¶36 The 2016 License details the lane rate and extra costs SAC must pay. Scottsdale then updated the license with new fees in 2019 based on its assessment of other swim lane fee structures. The undisputed material facts do not establish that the updated fees are unreasonably low, or that the consideration SAC paid is disproportionate to Scottsdale's cost in providing the lanes. Instead, Scottsdale structured the payment to account for additional staffing and mimic similar lane prices. The superior court did not err in granting summary judgment on the Gift Clause claim.

## IV.    Attorneys' Fees

¶37 Neptune requests attorneys' fees and costs under A.R.S. §§ 12-341, -348, and the private attorney general doctrine. Because Scottsdale is the prevailing party on appeal, we deny Neptune's request.

## CONCLUSION

¶38 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

10