IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK GILMORE, et al.,
*Plaintiffs/Appellants,*

*v.*

KATE GALLEGO, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 22-0049
FILED 4-18-2023

Appeal from the Superior Court in Maricopa County
No.  CV2019-009033
The Honorable Daniel G. Martin, Judge

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

The Goldwater Institute, Phoenix
By Jonathan Riches, Timothy Sandefur
*Counsel for Plaintiffs/Appellants*

Sherman & Howard, L.L.C., Phoenix
By John Alan Doran, Matthew A. Hesketh
*Counsel for City Defendants/Appellees*

Martin & Bonnett, P.L.L.C., Phoenix
By Daniel Bonnett, Jennifer Kroll
*Counsel for Intervening Defendant/Appellee AFSCME*

Pacific Legal Foundation, Phoenix
By James M. Manley, Deborah J. La Fetra
*Co-Counsel for Amicus Curiae Counsel for Plaintiffs/Appellants*

Pacific Legal Foundation, Sacramento, California
By Deborah J. La Fetra
*Co-Counsel for Amicus Curiae Counsel for Plaintiffs/Appellants*

American Civil Liberties Union of Arizona, Phoenix
By K.M. Bell, Jared G. Keenan
*Amicus Curiae Counsel for Plaintiffs/Appellants*

---

**OPINION**

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Vice Chief Judge David B. Gass joined. Judge Cynthia J. Bailey concurred in part and dissented in part.

---

**T H U M M A**, Judge:

¶1 Plaintiffs Mark Gilmore and Mark Harder appeal from the entry of summary judgment against them and in favor of the City of Phoenix and the American Federation of State, County and Municipal Employees, Local 2384 (Union) on plaintiffs' claims that the City's employment practices violated Arizona's Constitution. The superior court determined that plaintiffs' claims fail because they cannot show that the "release time" provisions in an agreement between the City and the Union violate their rights to free speech, freedom of association or to work, or the Gift Clause, under Arizona's Constitution. For the reasons below, summary judgment is affirmed but an award of attorneys' fees against plaintiffs is vacated.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Individuals who work for the City are in different units for collective bargaining. Unit II consists of employees engaged in skilled trades, such as mechanics, electricians and maintenance workers. *See* Phoenix City Code Art. XVII (P.C.C.) § 2-212(A)(2)(b) (2023).[1] The City's ordinances recognize the right of units to organize and designate an authorized employee representative to collectively bargain with the City for "wages, hours and working conditions." P.C.C. §§ 2-210(2), 2-209(2), 2-214(B). Starting in 1976, the Union has been Unit II's authorized employee representative. During that time, the Union has acted as the exclusive representative for all Unit II employees, no matter if they belong to the Union. Of the approximately 1,500 employees in Unit II, 671 are Union members.

**¶3**　　　　Every other year, the City and the Union collectively bargain the terms of an agreement for Unit II employees. The resulting collective bargaining agreement is set forth in a Memorandum of Understanding, or MOU. An MOU contains the terms of employment for Unit II employees, including wages and benefits. After the City and the Union agree to an MOU, it is submitted to the City Council for approval. P.C.C. §§ 2-210(12), 2-215(C). If the City Council approves, the MOU becomes effective. P.C.C. § 2-215(C).

**¶4**　　　　In 2019, the City and the Union agreed to, and the City Council approved, an MOU for Unit II employees for July 1, 2019, to June 30, 2021. This MOU, which is about 60 pages long, includes provisions governing what the parties call "release time." *See* MOU § 1-3(A). "While on release time, Union members and other Unit II employees are released from their normal job duties but still paid at the same rate(s) of pay by the City" to perform other activities. The MOU states release time provides "an efficient and readily available point of contact for addressing labor-management concerns" between the City and the Union.

**¶5**　　　　The MOU contains four general categories of "release time:" (1) four full-time release time positions for Union members to engage exclusively in Union activities; (2) an annual bank of up to 3,183 release time hours to be used for Union purposes as permitted under the MOU; (3) 150 release time hours for Union members to attend seminars, lectures and conventions and (4) up to $14,000 from the City to the Union to reimburse costs of Union members to attend training for employee relations skill

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

development. MOU § 1-3(A). The annual cost of release time is about $499,000, or about 0.31% of the City's annual $169 million payment required under the MOU.

¶6     Plaintiffs work for the City as mechanics and belong to Unit II. Although plaintiffs once were Union members, they terminated their membership before suing. In October 2019, plaintiffs sued the City (including the Mayor and City Manager), seeking declaratory and injunctive relief based on their claims that the MOU's release time provisions violate Arizona's Constitution. Plaintiffs argued release time is paid for by all Unit II employees, including non-Union members -- not the City -- and that the release time provisions unconstitutionally violate their rights to free speech, to free association and to work. Plaintiffs also argued the release time provisions violate Arizona's Gift Clause. The Union intervened as a defendant.

¶7     After the close of discovery, plaintiffs and defendants (the City and the Union) filed competing motions for summary judgment on all claims. After full briefing and oral argument, the superior court entered summary judgment for defendants and against plaintiffs. Tacitly rejecting defendants' arguments that plaintiffs lacked standing, the court held that plaintiffs' free speech, free association and right to work claims failed because "the undisputed facts demonstrate that Plaintiffs do not fund release time." The court also held that plaintiffs' Gift Clause claim fails because the release time provisions serve a public purpose and the consideration "is not grossly disproportionate so as to constitute a subsidy." Concluding this is a "contested action arising out of a contract," the superior court later awarded defendants more than $355,000 in attorneys' fees and about $12,000 in taxable costs. *See* Ariz. Rev. Stat. (A.R.S.) §§ 12-341, -341.01.

¶8     This court has jurisdiction over plaintiffs' timely appeal from the resulting judgment under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).[2]

---

[2] The court acknowledges and appreciates the amici briefs filed by Pacific Legal Foundation and the American Civil Liberties Union Foundation of Arizona and the parties' responses. To the extent the amici ask the court to address issues and arguments the parties did not raise, the court declines that request. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84 (1981) (amici curiae may not create, extend or enlarge issues).

**DISCUSSION**

**¶9**        This court reviews the entry of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007).

**I.        Plaintiffs Have Standing to Challenge the Release Time Provisions.**

**¶10**        The City argues plaintiffs lack standing because they did not suffer an injury-in-fact to any legally protected right or interest. Unlike in federal court, standing in Arizona state court "is not a constitutional mandate" and, instead, is a matter of "prudential or judicial restraint." *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140 ¶ 6 (2005) (citations omitted). As stated by the Arizona Supreme Court, "[t]o gain standing to bring an action, a plaintiff must allege a distinct and palpable injury." *Id.* (quoting *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998)); *accord Mills v. Ariz. Bd. of Tech. Regis.*, 514 P.3d 915, 923 ¶ 24 (2022) (same).

**¶11**        Plaintiffs allege that, under the MOU, they are required to direct part of their total compensation to release time. Plaintiffs also allege that the City pays for release time using tax revenue. The record shows that plaintiff Harder lives in the City. Accordingly, plaintiffs have adequately alleged an injury-in-fact to their protected rights and interests sufficient to show standing. *See Cheatham v. DiCiccio*, 240 Ariz. 314, 317 ¶ 3 (2016); *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 347 (1984); *see also Brush & Nib Studio, LC v. City of Phx.*, 247 Ariz. 269, 279–82 ¶¶ 33–47 (2019) (finding plaintiffs had standing to bring compelled speech claim against the City). For these reasons, the City has failed to show plaintiffs lack standing.[3]

---

[3] Although the MOU has now expired, the challenges plaintiffs raise are capable of repetition and thus are not moot. *See David G. v. Pollard ex rel. Cnty. of Pima*, 207 Ariz. 308, 309 ¶ 6 (2004) (citing cases). Among other things, the City and Union entered into a new MOU for 2021–2023, which contains identical release time provisions; the City has used release time provisions "[f]or decades" and the Arizona Supreme Court has considered challenges to release time after the relevant MOU expired. *See Cheatham*, 240 Ariz. at 316 ¶ 1.

## II.     The City, Not Plaintiffs, Pays for Release Time.

¶12     Along with their Gift Clause challenge discussed below, plaintiffs argue the release time provisions of the MOU violate Arizona's Constitution for three reasons: they constitute compelled speech and association and violate their right to work. *See* Ariz. Const. art. II, § 6 ("Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."); § 5 ("The right of petition, and of the people peaceably to assemble for the common good, shall never be abridged."); art. XXV ("No person shall be denied the opportunity to obtain or retain employment because of non-membership in a labor organization, nor shall the State or any subdivision thereof, or any corporation, individual or association of any kind enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of non-membership in a labor organization."). A critical component of these three claims is whether Unit II employees who are not Union members (like plaintiffs) pay, or whether the City pays, for release time under the MOU. The superior court determined these claims fail "because the undisputed facts demonstrate that Plaintiffs do not fund release time." On appeal, plaintiffs argue that conclusion was in error.

¶13     Plaintiffs first argue the "plain language" of the MOU states plaintiffs pay for release time "as part of their compensation." The sole support plaintiffs rely on in making this claim is one sentence in the MOU that states: "The cost to the City for these release positions and release hours, including all benefits, has been charged as part of the total compensation detailed in this agreement." MOU § 1-3(A). Plaintiffs argue this sentence means "release time is *compensation* to *all* Unit [II] employees." But this sentence summarizes "[t]he cost to the City;" it does not, somehow, show that Unit II employees pay for release time out of the *employees'* personal compensation.

¶14     Plaintiffs correctly quote *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31* for the proposition that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages." 138 S. Ct. 2448, 2486 (2018). But the mandatory payment in *Janus* (employer to employee, but with a deduction of the non-union employee's wages for payments to a union) is not what the MOU requires or contemplates. There is no claim that plaintiffs are credited with phantom or other wages that are never received because they are reduced by required Union dues or deductions or any other payment mechanism that violates *Janus*. Plaintiffs admit they have received all the wages and benefits promised to them under the MOU. Simply put, plaintiffs are not forced to

make any payment to the Union, in any respect. The release time is paid by the City, not by deductions from Unit II employees' wages.

¶15        The City's total cost for Unit II includes wages, benefits, pension contributions, uniforms, tools, equipment allowances and expenditures for equipment and facilities. The cost to the City is funded by tax revenues. Indeed, plaintiffs allege that "[t]he City finances the benefits of release time to the Union under the MOU through city tax revenue." During their depositions, plaintiffs conceded taxpayers finance wages for Unit II employees. Plaintiffs also conceded that the City would not have to pay Unit II employees higher wages if release time was eliminated. Plaintiff Gilmore admitted the City "can do whatever it wants" with the money allocated for release time and agreed "that money belongs to the City, and the City gets to choose what to do with it." Plaintiff Harder testified the City may use the money as needed. The City -- not Unit II employees -- pays for release time under the MOU.

¶16        At oral argument before this court, plaintiffs argued that *Cheatham* "held that release time is funded as a component of individual compensation." Defendants counter, however, that *Cheatham* would not have undertaken a Gift Clause analysis if the employees, and not the City, paid for release time. When applicable, the Gift Clause restricts expenditures by **public entities**, not by employees or private parties. *See* Ariz. Const. art. IX, § 7 (limiting action by the state, county, city, town, municipality "or other subdivision of the state"). As defendants argue, *Cheatham* would have had no reason to address the Gift Clause if the City did not pay for release time. *Cheatham* is not, as plaintiffs argue, "simply dispositive of the question of whether [plaintiffs] fund release time."

¶17        The MOU in *Cheatham* said release time "has been charged as part of the total compensation contained in this agreement *in lieu of wages and benefits*." 240 Ariz. at 319 ¶ 14 (emphasis added). The italicized language is not contained in the MOU at issue here. Moreover, in *Cheatham*, "[o]ne of the City's negotiators testified, without contradiction, that if the City had not agreed to pay for release time, the corresponding amounts would have otherwise been part of the total compensation available" to the applicable City unit. *Id.* at 318–19 ¶ 14. In this case, there is no such evidence in the record.

¶18        Finally, plaintiffs assert that the terms of prior MOUs show that plaintiffs funded release time in the MOU at issue here. Before 2014, MOUs authorized paid release time. In 2014, the MOUs eliminated paid release time and allowed Unit II employees to voluntarily donate an additional eight hours of vacation time to fund release time. In 2019, the

MOUs went back to authorizing paid release time and eliminated the additional eight hours of vacation time. *See* MOU § 1-3(A). Plaintiffs claim that the elimination of the eight hours of vacation time means they are funding the release time. Not so. That the City and the Union agreed on different terms in prior MOUs and then reverted to the paid release time in the MOU at issue here does not show that Unit II employees' pay for release time. *See also Smith v. City of Phx.*, 175 Ariz. 509, 514–15 (App. 1992) (a public employee has no contractual right to past compensation); *Bennett ex rel. Ariz. State Pers. Comm'n v. Beard*, 27 Ariz. App. 534, 536–37 (1976) (same). On the record presented, the superior court properly found that the City, not plaintiffs, pays for release time.

### III.   Because the City Pays for Release Time, Plaintiffs' Free Speech, Free Association and Right to Work Claims Fail.

¶19        As plaintiffs conceded at oral argument before this court, their free speech and association and right to work claims each rest on the foundation that plaintiffs (not the City) pay for release time. But the factual predicate that plaintiffs pay for release time is not present here. Thus, these claims under Arizona's Constitution fail.

¶20        First, the City, not plaintiffs, pay for release time, meaning plaintiffs are not "compelled to subsidize" the Union's speech or other activities. Thus, release time does not implicate plaintiffs' freedom of speech, which "necessarily includes the freedom of deciding 'both what to say and what *not* to say.'" *Brush & Nib*, 247 Ariz. at 282 ¶ 48 (citation omitted). Nor does it implicate impermissible compelled speech, which "includes both the right to speak freely and the right to refrain from speaking at all." *Id.* (citation omitted). Because plaintiffs are not compelled "to host or accommodate another's message," their free speech rights have not been violated. *Id.* at 283 ¶ 51. For these same reasons, and as discussed above, release time does not force "public employees . . . to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities" in violation of "the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Janus*, 138 S. Ct. at 2459–60. Thus, plaintiffs' free speech claim fails.

¶21        Second, plaintiffs are not compelled to associate with the Union. Plaintiffs, who are Unit II employees, are not Union members and are not required to be Union members. In fact, no Unit II employee is required to join or associate with the Union. There is no factual support that the City requires non-Union members to associate with the Union, as plaintiff Harder conceded during his deposition. Both plaintiffs testified at

their depositions they were not forced to financially support the Union and were not forced to adopt the Union's positions or viewpoints. Thus, plaintiffs have shown no violation of their freedom of association rights, which include the "freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *see also Fraternal Ord. of Eagles, Inc., Tucson Aerie No. 180 v. City of Tucson*, 168 Ariz. 598, 601 (App. 1991) (noting freedom of association is implicated where the "State interferes with individuals' selection of those with whom they wish to join in a common endeavor") (citation omitted); *City of Tucson v. Grezaffi*, 200 Ariz. 130, 136 ¶ 13 (App. 2001) (explaining the Constitution protects a person's "right to associate for the purpose of engaging in those activities protected by the First Amendment") (citation omitted).

**¶22**         Finally, plaintiffs have shown no violation of the right to work set forth in the Arizona Constitution. Ariz. Const. art. XXV ("No person shall be denied the opportunity to obtain or retain employment because of non-membership in a labor organization."); *accord* A.R.S. § 23-1302 (same). The right to work may be violated when non-union members are required to financially contribute to a union. *Am. Fed'n of State, Cnty. & Mun. Emps., AFL–CIO, Local 2384 v. City of Phx.*, 213 Ariz. 358, 359 ¶ 1 (App. 2006). Plaintiffs, however, admit they are not forced to pay fees or dues to the Union. Plaintiffs do not have money deducted from their wages to support the Union. Plaintiffs admit they receive all wages and benefits they are entitled to under the MOU. Accordingly, plaintiffs have not shown that their right to work has been violated.

## IV.    Plaintiffs Have Not Shown That Release Time Required by the MOU Violates the Gift Clause.

**¶23**         Plaintiffs argue the release time required by the MOU violates the Gift Clause of Arizona's Constitution. This court reviews the interpretation and application of constitutional provisions de novo. *Cheatham*, 240 Ariz. at 317–18 ¶ 8. Plaintiffs bear the burden of proving a Gift Clause violation. *Schires v. Carlat*, 250 Ariz. 371, 374 ¶ 7 (2021) (citation omitted).

**¶24**         The Gift Clause provides: "Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. IX, § 7. As noted by the Arizona Supreme Court, the Gift Clause represents the public's reaction to "extravagant dissipation of public funds by counties, townships, cities, and towns in aid of the construction of railways, canals, and other like undertakings" and was primarily designed to

"prevent the use of public funds raised by general taxation in aid of enterprises apparently devoted to quasi public purposes, but actually engaged in private business." *Turken v. Gordon*, 223 Ariz. 342, 346 ¶ 10 (2010) (citations omitted). Although Gift Clause challenges often involve property rights, s*ee, e.g.*, *Schires*, 250 Ariz. at 373 ¶ 1 (payments to a private university and private property owner); *Turken*, 223 Ariz. at 344 ¶ 4 (parking garage spaces); *Ariz. Ctr. for Law in Pub. Int. v. Hassell*, 172 Ariz. 356, 361 (App. 1991) (interest in riverbed land); *Defenders of Wildlife v. Hull*, 199 Ariz. 411, 415 (App. 2001) (same); *Kromko v. Ariz. Bd. of Regents*, 149 Ariz. 319, 322 (1986) (hospital and leased land), the Gift Clause also applies to release time challenges, *see Cheatham*, 240 Ariz. at 316–17 ¶¶ 1–3; *Wistuber*, 141 Ariz. at 347–48.

¶25 Arizona has adopted a two-pronged test to determine whether a public entity's expenditure violates the Gift Clause, first focusing on whether the action being challenged serves a public purpose and, if so, then focusing on whether the value received by the public is far exceeded by the consideration paid. *Schires*, 250 Ariz. at 374 ¶ 7 (citing *Wistuber*, 141 Ariz. at 349). "First, a court asks whether the challenged expenditure serves a public purpose. If not, the expenditure violates the Gift Clause, and the inquiry ends." *Id.* at 374–75 ¶ 7 (citation omitted). "If a public purpose exists, the court secondarily asks whether 'the value to be received by the public is far exceeded by the consideration being paid by the public.' If so, the public entity violates the Gift Clause by 'providing a subsidy to the private entity.'" *Id.* at 375 ¶ 7 (citations omitted). When the court considers a Gift Clause challenge, it looks at the whole of the transaction; "[a] panoptic view of the facts of each transaction is required." *Cheatham*, 240 Ariz. 314 ¶ 10 (quoting *Wistuber*, 141 Ariz. at 349); *accord Turken*, 233 Ariz. at 352 ¶ 47.

### A.    Governing Cases Show the MOU Serves a Public Purpose.

¶26 Plaintiffs argue that release time "serves the Union's private interests, not public purposes." Although elusive to define, "a public purpose promotes the public welfare or enjoyment." *Schires*, 250 Ariz. at 375 ¶ 8 (citation omitted). "A court can consider both direct and indirect benefits of a government expenditure in deciding whether it serves a public purpose . . . ." *Id.* In determining whether a public purpose exists, the court must give a governmental entity appropriate deference. *See Cheatham*, 240 Ariz. 320 ¶ 21; *accord Schires*, 250 Ariz. at 375 ¶ 8 ("[A] court should not concern itself with the wisdom or necessity of the expenditure in question, as those considerations lie exclusively within the public entity's discretion."); *Turken*, 223 Ariz. at 349 ¶ 28 (similar). A public purpose is absent "only in those rare cases in which the governmental body's

discretion has been 'unquestionably abused.'" *Schires*, 250 Ariz. at 375 ¶ 9 (quoting *Turken*, 223 Ariz. at 349 ¶ 28).

¶27        Twice before, in considering similar (but not identical) release time provisions, the Arizona Supreme Court has concluded the provisions serve a public purpose. *See Cheatham*, 240 Ariz. at 321 ¶ 27 (rejecting claim that release time provisions in MOU do not serve a public purpose; "[t]he City Council did not abuse its discretion in concluding that the MOU, including the release time provisions, serves a public purpose"); *Wistuber*, 141 Ariz. at 347–48 (similar).

¶28        Plaintiffs point to no specific provision in the MOU here to establish the *Cheatham* analysis should not apply. Instead, plaintiffs cite to a pre-*Cheatham* case, *Kromko*, 149 Ariz. at 319, for the proposition that the City's "control and oversight over the use of release time . . . is constitutionally required." Plaintiffs claim that, because such control is lacking, *Kromko* shows the MOU does not serve a public purpose. *Kromko* noted that the nonprofit "independent corporation" that leased a public hospital was "still subject to the control and supervision of public officials," abating "the fear of private gain or exploitation of public funds" prompting the Gift Clause. *Id.* at 321. *Kromko* did not, as plaintiffs suggest, hold that public "control and oversight . . . is constitutionally required" under the Gift Clause. Instead, *Kromko* rejected a Gift Clause challenge. *Id.* at 322. In doing so, *Kromko* stated "*Wistuber* is still good law" and concluded the lease being challenged "serves a statutorily recognized public purpose," akin to the public purpose of release time stated in the MOU. *Id.* And *Cheatham* found a public purpose in similar release time provisions nearly 30 years after *Kromko* was decided. *See Cheatham*, 240 Ariz. at 321 ¶ 27. For these reasons, the superior court did not err in concluding that the MOU, including its release time provisions, serves a public purpose.

### B.     Governing Cases Show the Value Received by the Public Is Not Far Exceeded by the Consideration Paid by the Public.

¶29        Government action serving a public purpose may violate the Gift Clause if "the value to be received by the public is far exceeded by the consideration being paid by the public." *Schires*, 250 Ariz. at 376 ¶ 13 (quoting *Wistuber*, 141 Ariz. at 349); *see also Turken*, 223 Ariz. at 348 ¶ 22 ("When government payment is grossly disproportionate to what is received in return, the payment violates the Gift Clause."). Consideration "has a settled meaning in contract law," which is "what one party to a contract obligates itself to do (or to forbear from doing) in return for the promise of the other contracting party." *Turken*, 223 Ariz. at 349 ¶ 31. "Although the consideration paid by a public entity may be legally

sufficient under contract law, it does not necessarily follow that it is sufficient under the Gift Clause." *Schires*, 250 Ariz. at 376 ¶ 14. Thus, an examination of the adequacy of consideration is appropriate under the Gift Clause analysis "because paying far too much for something effectively creates a subsidy from the public to the seller." *Cheatham*, 240 Ariz. at 321 ¶ 29 (quoting *Turken*, 223 Ariz. at 350 ¶ 32).

¶30 "In deciding the sufficiency of consideration under the second prong, courts should not give deference to the public entity's assessment of value but should instead identify the fair market value of the benefit provided to the entity and then determine proportionality." *Schires*, 250 Ariz. at 378 ¶ 23 (disapproving a statement in *Cheatham* that deference to the public entity is appropriate when analyzing the sufficiency of consideration). The court does not consider "anticipated indirect benefits" as sufficient consideration. *See Schires*, 250 Ariz. at 376 ¶ 14 (quoting *Turken*, 233 Ariz. at 350 ¶ 33). Rather, the relevant consideration for Gift Clause analysis consists of "direct benefits that are 'bargained for as part of the contracting party's promised performance.'" *Id.* The party bringing the Gift Clause challenge bears the burden of proving the disproportionality of consideration. *Wistuber*, 141 Ariz. at 350.

¶31 *Cheatham*, as modified by *Schires*, provides the analysis and shows that the consideration paid by the public does not far exceed the value received by the public under the MOU. As applicable here, *Cheatham* recognized that the MOU at issue in that case was not only an agreement between the City and the union, but it bound every employee in the applicable unit working for the City. 240 Ariz. at 322 ¶ 32. Adopting a "panoptic view" of the transaction, *Cheatham* noted that, when faced with a Gift Clause challenge to a collective bargaining agreement, courts cannot consider the challenged provisions in isolation. *Id.* at 321–22 ¶¶ 30–31. Instead, when focusing on what the City received, "it is necessary to consider what the [unit employees] have agreed to do -- to work under the wages, hours, and conditions specified in the MOU -- in exchange for the compensation package." *Id.* at 322 ¶ 32. In exchange for the release time provisions included in the *Cheatham* MOU, the City received in return the ability to impose terms of employment on every unit employee, union members and non-union members alike. *Id.* That, *Cheatham* continued, was a direct (not indirect) benefit for the City by employing those unit employees. *Id.* at 324 ¶ 42.

¶32 In looking at the specific cost of release time, *Cheatham* also undertook a financial analysis. Of the $660 million paid by the City for the unit employees, *Cheatham* noted the cost of the release time was about $1.7 million. *Id.* at 319 ¶ 14. Noting that plaintiffs never argued the $660 million

the City paid in total compensation under the MOU was grossly disproportionate to the services provided by the Unit 4 employees, *Cheatham* found the $1.7 million for release time -- about 0.26% of the total compensation and about $322 annually per unit member -- was "not 'grossly disproportionate' to the value of what [the union] and the [unit employees] have agreed to provide in return." *Id.* at 322 ¶ 33 (quoting *Turken*, 223 Ariz. at 350 ¶ 35).

¶**33**        *Cheatham* rejected the observation that there was "no showing that absent release time, the City would be unable to employ" unit employees. *Id.* at 322 ¶ 34. Instead, "[t]he pertinent issue for a Gift Clause analysis is not whether a particular expenditure is the only way to achieve a public purpose, but instead whether a comprehensive examination of the agreement reveals that the expenditure is grossly disproportionate to the benefit the public receives." *Id.* (citing *Turken*, 223 Ariz. at 350 ¶ 35).

¶**34**        As in *Cheatham*, as modified by *Schires*, the MOU at issue here is an agreement between the City and the Union that is binding on every Unit II employee who works for the City. In exchange for the provisions provided for in the MOU, Unit II employees have agreed to work for the City under the wages, hours and conditions specified in the MOU. This tracks the "general contractual principle" that the City's performance (agreement to pay release time) may be supported by consideration in the form of performance or promise by either the Union or the Unit II employees. *See Cheatham*, 240 Ariz. at 322 ¶ 32 (citing Restatement (Second) of Contracts § 71(4), cmt. e (Amer. Law Inst. 1981)).

¶**35**        The MOU in *Cheatham* expressly stated that release time "has been charged as part of the total compensation contained in this agreement *in lieu of wages and benefits*." 240 Ariz. at 320 ¶ 14 (emphasis added). Although substantially identical to the MOU in *Cheatham*, the MOU at issue here does not include the phrase "in lieu of wages and benefits." Citing the absence of that phrase here, the Dissent concludes that the Gift Clause has been violated. More specifically, citing the absence of that phrase, the Dissent [at ¶ 53] concludes that "the release time provisions are not supported by adequate consideration" because "the Unit II employees did not bargain for the release time provisions as part of their compensation." This conclusion runs counter to *Cheatham*'s direction to conduct a comprehensive examination of the MOU. And it disregards the fact that the parties bargained for the MOU as a single agreement.

¶**36**        Plaintiffs argue that the "release time provisions violate the Gift Clause because the Union uses release time in ways that do not serve a public purpose at all, and the City is not receiving direct, contractually

obligatory benefits in return for release time expenditures." The release time provisions in this MOU, however, do not materially differ from the release time provisions in the *Cheatham* MOU. In *Cheatham*, the Arizona Supreme Court declared that the "MOU, including its release time provisions, serves a public purpose." 240 Ariz. at 320 ¶ 23. Plaintiffs have not shown that the use of release time varies in any significant way from the MOU that *Cheatham* found was permissible, a decision binding on this court. *State v. Sullivan*, 205 Ariz. 285, 288 ¶ 15 (App. 2003).

¶37        Nor do the MOUs in *Cheatham* and in this case differ such that there was one agreement in the *Cheatham* MOU but two agreements in the MOU here. *See* Dissent at ¶ 48. Although containing different terms and covering different time periods, the *Cheatham* MOU is remarkably similar to the MOU here. True, the *Cheatham* MOU discussed release time in a Section defining the "Rights of Association," while the MOU here does so in a Section defining "Union Rights." And the *Cheatham* MOU involved 1,583 release time hours, while there are 3,183 release time hours in the MOU here. But both MOUs were two-party agreements between the City and the City employees' authorized representative (the Phoenix Law Enforcement Association in *Cheatham* and the Union here). And both were signed by (1) an Association or Union representative; (2) a City Labor Relations Representative and (3) the City Manager. Each MOU constitutes a single agreement.

¶38        Apart from *Cheatham*, the record shows that the release time provisions were bargained for as a part of the Unit II compensation. On behalf of Unit II employees, the Union bargained for the release time provisions as part of the total compensation package, including agreeing to receive paid release time in lieu of eight additional hours of vacation time, which is undoubtedly a benefit. *See Cheatham,* 240 at 322 ¶ 34 (explaining vacation time is a benefit). Unit II employees also approved, and are bound by, the MOU. Because the City's promise to pay for release time in exchange for Unit II's agreement to work under the wages, hours and conditions specified in the MOU constitutes adequate consideration, applying the directives set forth in *Cheatham*, it does not violate the Gift Clause even though the MOU at issue here lacks the phrase "in lieu of wages and benefits." *See id.* at 322 ¶ 32.

¶39        The consideration received by the City in exchange for the release time provisions provided for in the MOU are direct benefits. The Dissent [at ¶ 51] states that the City receives valueless "anticipated indirect benefits at best." Again, however, as in *Cheatham*, the City receives the direct benefit of being able to impose obligations on both the Union and Unit II employees in exchange for the promise to pay release time. Put

another way, under the MOU, the City receives the services of about 1,500 skilled tradespeople. As *Cheatham* directs, "[t]he pertinent issue for a Gift Clause analysis is not whether a particular expenditure is the only way to achieve a public purpose, but instead whether a comprehensive examination of the agreement reveals that the expenditure is grossly disproportionate to the benefit the public receives." 240 Ariz. 322 ¶ 34. The consideration received by the City is "the work the employees generally agree to provide under the agreement." *See id.* at 322 ¶ 31. And as directed in *Cheatham*, in construing an MOU with nearly identical release time provisions, "the consideration received by the City is not indirect benefits, but instead the obligations the MOU itself imposes on both [the Union] and the Unit" employees. *Id.* at 324 ¶ 42.

**¶40**       The financial analysis here is akin to what *Cheatham*, as modified by *Schires*, found did not violate the Gift Clause. *See id.* at 322 ¶ 33. The City annually pays $160 million in total compensation for its 1,500 Unit II employees. Plaintiffs do not argue the total annual cost is grossly disproportionate or far exceeds the services provided by the Unit II employees, or that the cost far exceeds what is received in return. The annual cost of release time is $499,000, representing about 0.31% of the total compensation and about $333 annually per unit member. These ratios are akin to the MOU that *Cheatham* upheld, where the cost of release time was about 0.26% of the total compensation and about $322 annually per unit member. *See id.* Viewed in the context of the MOU overall -- taking a "panoptic view" -- plaintiffs have not shown that the cost to the City of the paid release time is grossly disproportionate or far exceeds the value of what the Union and Unit II employees have agreed to provide to the City in return. *See id.*

**¶41**       The Dissent [at ¶ 51] states the City has failed to "provide[] any evidence of an objective fair market value of these claimed benefits." Plaintiffs, however, had the burden to show the City's cost of release time under the MOU far exceeds the value the City receives. *See Schires*, 250 Ariz. at 378 ¶ 22. Plaintiffs failed to do so. Nor did they claim that more discovery was needed before the superior court could decide the competing motions for summary judgment. *See* Ariz. R. Civ. P. 56(d). Thus, applying these cases, because the release time provisions in the MOU serve a public purpose and are supported by sufficient consideration, the superior court did not err in concluding the MOU does not violate the Gift Clause.

## V.     Defendants Were Not Eligible for an Award of Attorneys' Fees Under A.R.S. § 12-341.01.

**¶42**     Plaintiffs claim the superior court erred in concluding this is a "contested action aris[ing] out of a contract" and awarding defendants more than $355,000 in attorneys' fees. On appeal, plaintiffs claim that award is contrary to law and should be vacated. "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Plaintiffs' claims, which have as their foundation the enforceability of the MOU's release time provisions, at least arguably fall within that statute. This court, however, does not write on a clean slate in considering this issue. *See Wistuber*, 141 Ariz. at 347. The Arizona Supreme Court has found that claims challenging the constitutionality of actions of a public body, including under the Gift Clause of Arizona's Constitution, do not qualify for an award of fees under A.R.S. § 12-341.01. *Id.* at 350.

**¶43**     In *Wistuber*, the court rejected a claim that a governmental entity succeeding in a Gift Clause challenge like the one here was eligible for an award of fees under A.R.S. § 12-341.01. *Id.* at 350. The plaintiffs in *Wistuber* brought a declaratory judgment action claiming release time provisions in a collective bargaining agreement between a school and a teachers' association violated the Gift Clause. *Id.* at 347. The superior court rejected the challenge and, in upholding that ruling, the Arizona Supreme Court rejected the school's claim it was entitled to attorneys' fees under A.R.S. § 12-341.01. *See id.* at 350. *Wistuber* did so reasoning that plaintiffs:

> are challenging the constitutionality of the action of a public body. An award of attorney's fees would be contrary to public policy in this case because it would have a chilling effect on other parties who may wish to question the legitimacy of the actions of public officials. Where aggrieved citizens, in good-faith, seek a determination of the legitimacy of governmental actions, attorney's fees should not usually be awarded. Courts exist to hear such cases; we should encourage resolution of constitutional arguments in court rather than on the streets.

*Id.* Applying *Wistuber* here, defendants are not entitled to an award of attorneys' fees under A.R.S. § 12-341.01.

¶44 Defendants cite two more recent pension cases to suggest that this court should not follow *Wistuber*. *See Am. Fed'n of State Cnty. & Mun. Emp. AFL-CIO Local 2384 v. City of Phx.* (*Local 2384*), 249 Ariz. 105 (2020); *Piccioli v. City of Phx.*, 249 Ariz. 113 (2020). Those cases, however, involved claims by pension plan participants that the City breached their employment contracts and unconstitutionally impaired their vested rights to pension benefits. *See Local 2384*, 249 Ariz. at 106–07 ¶¶ 4–5, 26; *Piccioli*, 249 Ariz. at 116 ¶¶ 6–7, 22. The court rejected plaintiffs' claims on the merits, finding no breach of their contractual rights and no unconstitutional impairment. *Local 2384*, 249 Ariz. at 106–07 ¶¶ 4–5; *Piccioli*, 249 Ariz. at 116 ¶¶ 6–7. Allowing an award of fees under A.R.S. § 12-341.01, the court noted plaintiffs challenged government action "as parties to a contract rather than as aggrieved citizens." *Local 2384*, 249 Ariz. at 113 ¶ 33; *Piccioli*, 249 Ariz. at 119 ¶ 24. In doing so, the court left in place but distinguished *Wistuber*, "which stated that courts should generally refrain from awarding fees under § 12-341.01 against citizens who sue to challenge the legitimacy of government action because it would 'chill' such suits." *Local 2384*, 249 Ariz. at 113 ¶ 33; *Piccioli*, 249 Ariz. at 119 ¶ 24. Given the nature of the claims here, *Wistuber* controls, meaning defendants are not eligible for an award of fees under A.R.S. § 12-341.01. As a result, the superior court's award of attorneys' fees for defendants is vacated.[4]

## CONCLUSION

¶45 The grant of summary judgment against plaintiffs Mark Gilmore and Mark Harder and in favor of the City of Phoenix and the Union on plaintiffs' claims is affirmed. The award of attorneys' fees against plaintiffs and in favor of defendants is vacated. Defendants are awarded their taxable costs on appeal contingent upon their compliance with ARCAP 21.

---

[4] There was no finding that plaintiffs' claims in this case were "groundless or frivolous" or were "brought for the purpose of harassing" the City, exceptions to the prohibition for recovering fees under A.R.S. § 12-341.01 identified in *Wistuber*. 141 Ariz. at 350.

**B A I L E Y, J.,** concurring in part and dissenting in part:

¶46     Though I join the rest of the majority decision, I respectfully dissent from Part IV(B) because in my view the cost of the release time provisions far exceeds the value, if any, of the direct benefits the City receives in return, violating the Gift Clause. *See Schires v. Carlat*, 250 Ariz. 371, 376, ¶ 13 (2021).

¶47     Finding *Cheatham* controlling, the majority concludes the City's cost for release time does not far exceed the value of the work the Unit II employees have agreed to provide in return. *See supra*, ¶ 36. But *Cheatham* does not address the contractual arrangement presented in this case. In *Cheatham*, the release time provisions were negotiated with the police officers and their union "*in lieu of increased wages and benefits*" and a "City[] negotiator[] testified without contradiction that if the City had not agreed to pay for release time, the corresponding amounts would have otherwise been part of the total compensation available" to the officers. *Cheatham v. DiCiccio,* 240 Ariz. 314, 318-19, ¶ 14 (2016) (emphasis added). The court therefore found the officers agreed to work under the MOU in exchange for a compensation package that included release time and concluded this agreement provided the City adequate consideration for its release time payments. Id. at 322, ¶¶ 32-33.

¶48     But unlike in *Cheatham*, here there are essentially two agreements: one with the city employees for their compensation and one with the union for release time. This is because the release time provisions are not a part of the compensation package for which Unit II employees agreed to work. In fact, the MOU specifically excludes the union payments from employee compensation. And the release time provisions were not negotiated for in lieu of wages and benefits but were negotiated separately. Despite the illusory term "total compensation," both the City and the majority recognize, "total compensation" is a term of art that describes the City's total cost for an MOU, not the Unit II employees' bargained-for compensation package. *See supra*, ¶ 13. Indeed, the City acknowledged there are costs to the City "that would not be a part of the wages or benefits of any City employees, but they still would be included in the total compensation because they represent a cost to the City." And the City's deputy budget and research director, who costed labor negotiations for this MOU, reported that the total wages and benefits for Unit II employees amounted to $140.5 million per year, not the "total compensation" cost of $169 million per year.

¶49      The Unit II employees thus have not agreed to "work under the wages, hours and conditions specified in the MOU—in exchange for [a] compensation package [that] includes the release time provisions." *Cheatham*, 240 Ariz. at 322, ¶ 32. Because the compensation package Unit II employees bargained for does not include release time, their promise to work under the MOU cannot be consideration to support the City's release time payments. *See* Restatement (Second) of Contracts § 71(1) (1981) ("To constitute consideration, a performance or a return promise must be bargained for.").

¶50      The City presents its arguments as though the MOU was one agreement rather than two agreements housed in one document. The City argues that if under the entire MOU, it receives sufficient consideration for all its expenditures, there can be no Gift Clause violation and it is inappropriate for courts to consider whether an individual MOU provision is supported by adequate consideration. Not so. Though we take a panoptic view of a labor agreement and do not consider its provisions in isolation, *Cheatham*, 240 Ariz. at 321-22, ¶¶ 30-31, we treat each agreement individually in determining whether its provisions are supported by adequate consideration, *see id.* at 322, ¶ 33 ("The City's *payments for release time* are supported by consideration." (emphasis added)). Here, the City's payments for release time are wholly separate from their agreement with the Unit II workers. The release time provisions are in a stand-alone agreement with the union.

¶51      The City argues it nonetheless receives adequate consideration for its release time payments because under the MOU the Union agreed to serve on various City committees and task forces and to represent Unit II employees in grievances. But we do not defer to the City's assessment of value. *Schires,* 250 Ariz. at 378, ¶ 23. And the benefits the City claims it receives from these agreements, such as avoiding lawsuits and efficiently addressing labor concerns, are anticipated indirect benefits at best, which are "valueless under [the] second prong" of the Gift-Clause analysis because the Union has not provided an enforceable promise to provide these benefits. *Id.* at 377, ¶ 16. Nor has the City provided any evidence of an objective fair market value of these claimed benefits. *Id.* at ¶ 23 ("In deciding the sufficiency of consideration under the second prong, courts should . . . identify the fair market value of the benefit provided to the entity and then determine proportionality."). And though the majority correctly notes the burden is on plaintiffs to show a Gift Clause violation, *see supra* ¶ 40, the "City may not avoid scrutiny of a contractual obligation's value by providing insufficient detail to permit valuation," *Schires,* 250 Ariz. at 378, ¶ 21.

¶52	The majority concludes that because the release time provisions here do not "materially differ" from those in *Cheatham,* we are bound to find the release time provisions here do not violate the Gift Clause. *See supra,* ¶ 36. Though the release time provisions are substantially the same as those in *Cheatham,* here the contractual arrangement regarding those provisions is markedly different—the release time provisions were not bargained for as part of the employees' compensation package. And *Cheatham* held that when taking a panoptic view of a labor agreement, *if* the release time provisions were bargained for as part of the employees' compensation package, *then* the employees' promise to work under the MOU's terms is consideration to support the release time payments. *Cheatham,* 240 Ariz. at 322, ¶ 32. Here the City removed the language linking the release time payments and the employees' compensation, thus ensuring the City does not violate the free speech and association rights of non-union member employees. *See supra*, ¶¶ 19-21. But without this link, the agreement violates the Gift Clause.

¶53	In my view we are not bound to stretch *Cheatham's* holding to apply to the MOU here because the Unit II employees did not bargain for the release time provisions as part of their compensation. Thus, here the release time provisions are not supported by adequate consideration and the cost to the City for release time far exceeds the value of the direct benefits the City receives in return, violating the Gift Clause. *See Schires*, 250 Ariz. at 376, ¶ 13. I respectfully dissent.



AMY M. WOOD • Clerk of the Court
FILED:    AA